Homer **OSHIA** and Rose Mary Oshia,
Appellants,

v.

**E. A. STROUT REALTY AGENCY, INC.,**
d/b/a Strout Realty, Inc., Respondent.

No. 52328.

Supreme Court of Missouri,
Division No. 2.

Sept. 11, 1967.

James B. Herd and Deeba, DeStefano,
Sauter & Herd, St. Louis, for plaintiffs
(appellants).

Bussell, Hough & Greene, Leland C.
Bussell and Phillip R. Garrison, Spring-
field, for respondent.

BARRETT, Commissioner.

This is an action by Homer and Rose
Oshia to recover $1500.00 actual damages
and $25,000.00 punitive damages for fraud
in connection with a note executed by
plaintiffs in the sum of $3423.16. Par-
ticularly, the alleged fraud relates to
the application of monthly payments of
$838.49 on the note, first to interest due
rather than to principal thereby obligating
plaintiffs to pay a higher amount for a
clubhouse than the parties bargained for.
In the beginning the defendants were E. A.
Strout Realty Agency, Inc., d/b/a Strout
Realty, Inc., the Amron Investment Cor-
poration and Otis and Lucille Littles, the
individuals, allegedly, being agents of the
other defendants. The suit was com-
menced in the Circuit Court of the City of
St. Louis. There was no service of proc-
ess on the Littles, residents of Farmington,
St. Francois County. The trial court sus-
tained a motion to dismiss for lack of
jurisdiction as to Amron Investment and
there is no appeal from that order. And
finally, the court sustained Strout's motion
to dismiss plaintiffs' petition for failure to
state a cause of action for fraud and the
plaintiffs have appealed from the judgment
finally entered against them as to Strout.

The Oshias' petition alleges that in June
1961 they entered into negotiations with
Otis Littles, agent for the defendants, for
the purchase of a clubhouse to be erected
on their lot on Potosi Lake. Littles, they
say, represented to them that he would
have a clubhouse constructed for them at a
cost of $2170.00, financed over a period of

seven years by payments of $38.49 a month and that the entire cost of construction, including finance charges and interest, would be $3423.16. Relying on these representations construction of the clubhouse was started and on August 11, 1961, the Oshias signed a promissory note in the amount of $3423.16 and started making monthly payments. But plaintiffs allege that contrary to the oral agreement of the parties the note provided for payment "at 6% per annum with the monthly installments to be applied first in payment of interest due on the unpaid principal and the remainder in reduction of the principal so that, in effect, the plaintiffs were obligated to pay a higher price for the clubhouse than was bargained for by the plaintiffs." The plaintiffs allege that they "were ignorant of the legal significance of the note" and were led to believe that it corresponded with their original agreement. And finally they allege that the representations were "deliberately and maliciously" made and so in addition to $1500.00 actual damages they prayed punitive damages of $25,000.00.

. In their argument here plaintiffs say that the principal sum stated in the note, $3423.16, and the recited monthly payments, $38.49, "were the same as those agreed upon earlier" and that the "interest rate required by the note was the normal rate then prevalent" but they say, "The note was therefore deceptively similar to the oral agreement of the parties in every respect except that the defendant had cleverly substituted the aggregate amount due for the unit cost agreed upon by the parties." In summary and as stated at the outset, the essence of the plaintiffs' claim is that "Contrary to the expectations of the plaintiffs, the note actually signed by them recited an amount due of $3423.16 *but provided that interest at 6% per annum must be paid on the amount due with monthly installments to be applied first in payment of interest due on the unpaid principal and the remainder in reduction of the principal.*"

The appellants do not cite any precisely similar cases, they rely only on the general rules, pointing to the several essential elements of a cause of action for fraud, as illustrated by the fraudulent representation that a cow was free from Bang's disease, King v. Morris, Mo.App., 315 S.W.2d 497, and the representation that an apartment house was not subject to the one-family restriction of a zoning ordinance, Dettler v. Santa Cruz, Mo.App., 403 S.W.2d 651. While the appellants allege that they "were ignorant of the legal consequences of the note," they do not allege that they were illiterate and "unable to read and write, and who was thereby induced to sign" a note bearing 8% interest rather than the orally agreed upon rate of 5% interest. Stacy v. Ross, 27 Tex. 3. The circumstances of plaintiffs' executing the note are not stated. They do not allege that for any reason they were prevented or tricked into not reading the note, they do not even allege that they did not read the note before signing it. This is not to say that plaintiffs may or may not have had a cause of action for simple breach of contract or upon some other theory or basis, it is to say, however, that as a common-law action for actual and punitive damages for fraud the case is governed in its essentials by Hanson v. Acceptance Finance Co., Mo.App., 270 S.W.2d 143. The court in that case was concerned, not with the sufficiency of a petition, but with the sufficiency of the evidence to make a case, but the principle is the same. There the plaintiffs in need of $1220.36 to pay certain debts and for "Christmas time" applied for a loan of $1400.00. After some negotiation and pursuant to an agreement between the parties plaintiffs on December 21, 1948, executed a note in the sum of $1890.00 payable in eighteen installments of $105.00 payable on the last day of each month. Included in the principal sum was $201.76 for life insurance and $43.90 for automobile insurance. The note provided for payment of the principal debt in installments "with interest *after maturity* at the rate of eight

per cent (8%) per annum until paid (*interest to maturity at the highest lawful contract rate having already been deducted*)." The plaintiffs paid the note in full and instituted this suit alleging and proving as fraud the representation that interest at 8% per annum amounted to the included sum of $226.80 which admittedly exceeded the maximum lawful rate of 8% interest —resulting in an excess charge and payment of $119.50. (The jury awarded plaintiffs $119.50 actual damages and $5500.00 punitive damages.) The evidence is fully set out, the cases relating to the common-law action for fraud are reviewed but material and governing here, by analogy if not directly, the court said, 270 S.W.2d l.c. 149, 150, 151:

> "The principle is well established that in order to secure relief on the ground of fraud, the complainant must have been justified, under the circumstances of the case, in relying upon the misrepresentation which is sought to be made the basis of the charge of fraud.

> \*   \*   \*   \*   \*   \*

> "It is evident that plaintiffs knew the amount of the interest charge *in dollars and cents* before they accepted the loan and executed the note and mortgage. The only misrepresentation disclosed by plaintiffs' testimony was to the effect that the interest ($226.80) included in the note had been computed at the rate of 8% per annum. We must accept plaintiffs' testimony as true and assume that Smith made such a statement to them. In addition, the note recited that 'interest at the highest lawful contract rate' had 'already been deducted'. We think it clear that plaintiffs had sufficient knowledge of the facts before the loan was consummated to enable them to determine whether interest on the loan at the rate of 8% per annum, would amount to $226.80:

> \*   \*   \*   \*   \*   \*

> "After reviewing the evidence and applying the legal principles adverted to,

we hold that plaintiffs failed to prove that they had a right to rely upon the alleged fraudulent representations."

Accordingly in the circumstances alleged in this particular petition the plaintiff-appellants have failed to allege a common-law action for fraud and the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.