Shannon LEWIS, Plaintiff–Appellant/ Cross–Respondent,

v.

FAG BEARINGS CORPORATION, Defendant–Respondent/ Cross– Appellant.

Nos. 22379, 22399.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 30, 1999.

Motion for Rehearing or Transfer Denied Oct. 22, 1999.

Application to Transfer Denied Dec. 21, 1999.

Daniel E. Scott, Copeland & Scott, Joplin, Glenn R. Gulick, Jr., Hershwew & Gulick, Joplin, for Appellant/Cross–Respondent.

Bryan Cave, Stephen M. Bledsoe, David F. Oliver, Kansas City, for Respondent/Cross–Appellant.

PHILLIP R. GARRISON, Chief Judge.

These cases involve an appeal and cross-appeal from a judgment for compensatory damages and a judgment notwithstanding the verdict on punitive damages. Shannon Lewis ("Plaintiff") filed suit against FAG Bearings Corporation ("Defendant") for injuries allegedly arising from exposure to trichloroethylene ("TCE"). A jury found for Plaintiff and awarded her $716,000 in

compensatory damages and assessed $1,250,000 in punitive damages. The trial court granted Defendant's motion for judgment notwithstanding the verdict on the punitive damages award. Plaintiff appeals the entry of the judgment notwithstanding the verdict in Case No. 22399, and Defendant appeals the judgment awarding compensatory damages in Case No. 22379.

Defendant utilized TCE, which is now classified as a hazardous substance and hazardous waste under federal guidelines, at its manufacturing facility in Joplin, Missouri from 1970 to 1982. There was evidence that during those years, TCE was dumped or leaked into pits, lagoons, and onto the ground at Defendant's facility. The land sloped to the south from Defendant's facilities, in the direction of the Village of Silver Creek ("Silver Creek").[1]

Plaintiff lived in Silver Creek with her family from 1985, when she was ten years old, until 1989. During that time, she drank well water, played outdoors, played in a local creek and pond, played in dirt at a nearby construction site, and sometimes slept in the basement of their home which occasionally contained moisture from groundwater. According to the testimony, during the time that she lived in Silver Creek Plaintiff started having health problems which continued after the family moved in 1989. It was Plaintiff's contention that exposure to the TCE caused her to experience numerous and continuing health problems including brain damage, cognitive deficits, personality changes, fatigue, muscle aches, headaches, malaise, and upper respiratory problems.

Following the jury verdict, the trial court denied Defendant's motion for judgment notwithstanding the verdict, or in the alternative, for a new trial as it related to the verdict for compensatory damages, but entered a judgment notwithstanding the

verdict on the claim for punitive damages. In doing so, the trial court held that the issue of punitive damages should not have been submitted to the jury because Plaintiff had failed to make a submissible case on that claim.

■ In her only point on appeal, Plaintiff contends that the trial court erred in entering a judgment notwithstanding the verdict on the issue of punitive damages. She claims that she presented a submissible punitive damage case because the evidence showed that Defendant knew or was charged with knowledge as early as 1981 that TCE from its facilities was causing contamination with a high probability of injury to nearby residents, and it failed to take any action to correct it, notify the Silver Creek residents, or cooperate with the State's later investigation and cleanup efforts.

■ On appeal from a judgment notwithstanding the verdict, appellate courts review the evidence and reasonable inferences favorable to the jury verdict and disregard contrary evidence that does not support the verdict. *Moore v. City of Park Hills*, 924 S.W.2d 301, 302 (Mo.App. E.D.1996). A defendant's motion for judgment notwithstanding the verdict should be granted only where the plaintiff failed to make a submissible case. *Id.*

In this case, there was evidence that Defendant knew of leaks of TCE during the years that it used the chemical. In fact, Defendant disposed of TCE on portions of its property which generally sloped towards Silver Creek during a period of time prior to Plaintiff moving to that area. The individual in charge of disposing of the TCE testified that Defendant stopped disposing of it on the ground and started storing it in barrels about the time the Environmental Protection Agency ("EPA") started issuing regulations con-

---

1. No exhibits have been filed with this court. See Rule 81.16. Likewise, we are not directed to any part of the six volume, 1200 page transcript, or legal file indicating the proximity of the Village of Silver Creek to the Defen-

dant's property. We infer from the testimony that portions of Silver Creek adjoined or were in close proximity to the south boundary of Defendant's property.

cerning the chemical. The evidence indicated that, although he made his supervisor aware that the barrels were leaking, they remained on Defendant's property for over a year. Defendant stopped using TCE in 1982 when it no longer conducted the manufacturing processes that used the chemical.

In 1991, the Missouri Department of Health notified the Missouri Department of Natural Resources ("MDNR") that TCE had been found during routine sampling of wells in Silver Creek. Additional testing revealed that some wells directly south of Defendant's property had TCE levels substantially higher than the maximum containment level for drinking water. As a result of these discoveries, the MDNR conducted an investigation, including site inspections, which resulted in a request that the EPA provide bottled water to the residences where the TCE levels were found to be above acceptable levels, and the MDNR recommended that the EPA place the "site"[2] on the National Priorities List.[3] Subsequent inspections and assessments resulted in TCE being found in the ground water on Defendant's property, which flows to the south in the direction of Silver Creek. As of 1992, wells were found to be contaminated as far south as two miles from Defendant's property, and in 1993, surface water running off Defendant's property still contained evidence of TCE. The MDNR eventually concluded that Defendant was the primary, if not the sole, source for the TCE contamination, and that it could not account for approximately 30,000 gallons of the chemical which it had purchased over the years.

Plaintiff argues that even if Defendant had no specific purpose to harm anyone, punitive damages were authorized. She cites *Alack v. Vic Tanny Int'l,* 923 S.W.2d 330, 339 (Mo. banc 1996) and *Kansas City v. Keene Corp.,* 855 S.W.2d 360, 375 (Mo. banc 1993), for the proposition that punitive damages are authorized if the evidence shows that Defendant was aware of its conduct, and "at that time" was conscious of a high probability that its conduct would injure a specific class of persons.

In support of this point, Plaintiff points out that Defendant stopped its practice of dumping waste TCE on its property in approximately 1980 or 1981 when the EPA issued regulations prohibiting the disposal of TCE on the ground. Defendant then began storing the waste in barrels on its property and continued to do so for at least a year even though some of its employees pointed out to management that the barrels were leaking on the ground and asked that they be hauled off. Plaintiff also points to evidence that Defendant had disposed of TCE on the ground for a number of years before the EPA issued the regulations against disposing of it in that manner, and that after the regulations were issued and it started storing the sludge in barrels, it did nothing to clean up or warn of the TCE that had been disposed of in areas of the property where ground water ran to the south in the direction of Silver Creek. In this regard, Plaintiff notes that there was evidence that a ditch that Defendant pumped TCE into ran to the south in the direction of a pond on neighboring property, and that Defendant was notified on a "couple of occasions" that fish kills had occurred in the pond.[4]

Trial of this case began on March 3, 1998, and was subject to the Missouri Supreme Court's decision that evidence must meet the clear and convincing standard of proof on all claims for common law punitive damages. *Rodriguez v. Suzuki Motor Corp.,* 936 S.W.2d 104, 111 (Mo. banc 1996). Cases have described the clear, cogent and convincing standard of proof as

**2.** The record is not clear what area was included in the "site."

**3.** The "site" had not been placed on the "List" as of the time of trial.

**4.** We are not cited to any portion of the record indicating the location of that pond or that TCE was found in it.

that which instantly tilts the scales in the affirmative when weighed against evidence in opposition; evidence which clearly convinces the fact finder of the truth of the proposition to be proved. *In Interest of M.N.M.*, 681 S.W.2d 457, 459 (Mo.App. W.D.1984).[5]

The issue of punitive damages was submitted under the following instruction:

If you find in favor of plaintiff under Instruction Number 8, and if you believe that:

First, defendant did not warn persons who might be thereby affected of [sic] the release of TCE and did not attempt to remedy any contamination caused by the release, and

Second, defendant knew or had information from which defendant, in the exercise of ordinary care, should have known that such conduct created a high degree of probability of injury, and

Third, defendant thereby showed complete indifference to or conscious disregard for the safety of others,

then in Verdict A, you may find that defendant FAG is liable for punitive damages.[6]

Plaintiff's theory requires supporting evidence that Defendant knew, or should have known, at the time it failed to warn or attempt to remedy the contamination, that its conduct created a high degree of probability of injury.

Plaintiff's punitive damage claim was based upon her claim for compensatory damages which, in turn, was based upon her exposure to TCE while living in Silver Creek between 1985 and 1989. There was no proof that Defendant was aware prior to 1991 that any wells in Silver Creek were contaminated with TCE. Likewise, there was no proof that Defendant was aware, prior to the DNA investigations, that TCE had migrated from its property to property in Silver Creek or any other location at which Plaintiff might have been exposed.

In a negligence case, punitive damages are awardable only if, at the time of the negligent act, the defendant knew or had reason to know that there was a high degree of probability that the action would result in injury. *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc.*, 700 S.W.2d 426, 436 (Mo. banc 1985). Likewise, punitive damages require proof that defendant showed complete indifference to or conscious disregard for the safety of others. *Alack*, 923 S.W.2d at 339; *Stojkovic v. Weller*, 802 S.W.2d 152, 155 (Mo. banc 1991). "Conscious disregard or complete indifference" includes situations where the person doing the act or failing to act must be conscious of his conduct, and, although he has no specific intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally or probably result in injury. *Hoover's Dairy, Inc.* 700 S.W.2d at 435.

In *Keene*, our Supreme Court affirmed the granting of defendant's motion for judgment notwithstanding the verdict concerning plaintiff's punitive damage claims. There the claim involved exposure to asbestos, and the evidence included proof that an industry publication talked of the seriousness of the threat of exposure to asbestos, and testimony by defendant's employees that it knew that asbestos would be disturbed in the event of renovation or demolition. The Court concluded that there was no evidence that defendant was specifically informed of the contents of the industry publication which constituted no more than an unsubstantiated hypothesis, and that the evidence did not establish defendant's knowledge that the product was dangerous to persons other than unprotected workers during construction.

---

**5.** The word "cogent" adds little if anything to the meaning of the phrase clear, cogent and convincing. *Grissum v. Reesman*, 505 S.W.2d 81, 86 (Mo.1974).

**6.** Although Defendant objected to this instruction, there is no issue raised on this appeal about its propriety and we express no opinion concerning that matter.

855 S.W.2d at 375. The Court concluded that:

> Evidence of a generalized knowledge that asbestos poses a danger to a narrow class of unprotected persons who are exposed during the application or removal of asbestos-containing materials in buildings will not, under the strict requirements for a submissible punitive damages case, support an inference that plaintiffs had knowledge of a danger to the much broader class of persons who were merely present in such buildings at other times. [citation omitted] The evidence of knowledge of the danger to unprotected construction workers is insufficient to establish that [defendant] exhibited a complete indifference or conscious disregard to the safety of [plaintiff's] employees or patrons using the terminals.

*Id.* In the instant case, there was evidence that Defendant furnished rubber gloves and an air pack if needed to employees working with the chemical. As in *Keene*, however, this does not translate into knowledge of a danger to a much broader class of persons completely off the premises.

Likewise, the fact that Defendant's employees were made aware of a couple of instances of fish kills in a neighboring pond does not demonstrate a knowledge that they were caused by chemicals or substances emanating from Defendant's premises or, for that matter, that there was any danger to humans. Evidence of a vague and generalized knowledge of danger is insufficient. *Alack*, 923 S.W.2d at 339. Instead, the evidence must show that, at the time of the act complained of, the defendant had knowledge of a high degree of probability of injury to a specific class of persons. *Keene*, 855 S.W.2d at 375.

As indicated, the significant inquiry is whether at the time of the negligent act, Defendant knew or had reason to know that there was a high degree of probability that its actions would result in injury.

Here, the negligent act submitted was the failure to warn or attempt to remedy any contamination. As indicated, there was no evidence that Defendant knew or had reason to know of a high degree of probability that its failure to take such actions would result in injury, aside from what could best be described as vague and general knowledge, at least until the results of the well tests indicated contamination by TCE above acceptable levels. Those tests were not conducted until 1991, two years after Plaintiff moved from the area. Accordingly, we are constrained to hold that Plaintiff failed to make a submissible case on the punitive damage claim and that the trial court did not err in sustaining Defendant's motion for judgment notwithstanding the verdict. That judgment is affirmed.

Defendant raises three points of error in its appeal from the compensatory damage award, one concerning the submissibility of Plaintiff's claim for damages, and the other two relating to the admission of evidence.

In its first point, Defendant contends that the trial court erred in submitting Plaintiff's claim for compensatory damages because there was no competent evidence that she was exposed to TCE emanating from Defendant's property, and that she suffered any injury as a result of her alleged exposure. In determining if a submissible case was made, we view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff, and will not overturn a jury verdict unless there is a complete absence of probative facts to support it. *Kimbrough v. J.R.J. Real Estate*, 932 S.W.2d 888, 889 (Mo.App. E.D.1996). We will not, however, supply missing evidence or give a plaintiff the benefit of unreasonable, speculative, or forced inferences. *Id.* The evidence and inferences must establish every element and not leave any issue to speculation. *Id.*

In *Elam v. Alcolac, Inc.*, 765 S.W.2d 42 (Mo.App. W.D.1988), a toxic tort case, the defendant also contended that a submissi-

ble case had not been made because none of the elements of causation were proven by competent evidence. There, the court said that in such a case proof of causation was a manifold proof consisting of (1) an exposure to an identified harmful substance significant enough to activate disease; (2) a demonstrable relationship between the substance and biologic disease; (3) diagnosis of such disease in the plaintiff; (4) expert opinion that the disease found in plaintiff is consistent with exposure to the harmful substance; (5) defendant was responsible for the etiologic agent of the disease diagnosed in plaintiff. *Id.* at 178. Once the element of significant exposure to the harmful agent is established, the question becomes whether the pollutant can be demonstrated to cause the type of harm the plaintiff claims, and whether that harm did in fact result from the exposure. *Id.* The diagnosis of disease induced by environmental factors is essentially "a scientific undertaking" requiring proof which "the scientific community deems sufficient for that causal link." *Id.* Even where the evidence does not identify the particular chemical at a particular exposure, the particular concentration of the chemical, the particular dosage of the chemical taken in bodily, or the particular duration of the exposures, the identity of the toxic substances to which the harm is attributed may be shown by circumstantial evidence. *Id.* at 178–179.

Here, Defendant argues that Plaintiff failed to produce evidence that she was ever exposed to TCE in any amount much less in amounts significant enough to activate disease, the duration of any exposure, or that her alleged disease was caused by exposure to the chemical. Plaintiff, on the other hand, points to the testimony of a hydrologist (Dr. Everett); a family practitioner (Dr. Knapp); and a clinical health psychologist (Dr. Didriksen). Dr. Everett testified that in his opinion, Plaintiff, having lived at her family residence in Silver Creek from 1985 to 1989, drinking the well water, playing in the neighborhood, playing in a neighborhood pond and in Silver Creek itself, was exposed to TCE from Defendant's property. Dr. Knapp testified that assuming that Plaintiff was exposed to TCE through pond water, dirt, creek water, and well water, then his opinion to a reasonable degree of medical certainty was that it caused her medical problems and that she would need monitoring and treatment indefinitely into the future. Dr. Didriksen testified that Plaintiff has neurocognitive deficits as well as probable alterations in her personality and behavioral functioning related to toxic exposure, which will affect her functioning in the future.

Defendant relies on its interpretation of Plaintiff's evidence as being based on speculation. For instance, it points out that Dr. Everett did not base his opinions on any evidence that Plaintiff's well water was actually contaminated or that the other possible sources of contamination referred to by Plaintiff actually contained the chemical at any relevant time. Dr. Everett admitted that he had seen no test results of the well water, did not know the well's depth, and did not have access to any supporting data concerning TCE contamination where Plaintiff lived from 1985 to 1989. Defendant therefore argues that Dr. Everett lacked the necessary data to support his opinions, but instead assumed the presence of TCE in these locations and speculated about the concentrations and duration of Plaintiff's exposure. He concludes that Dr. Everett's opinions resulted from the impermissible piling of inference upon inference and did not constitute probative evidence of Plaintiff's exposure to TCE coming from Defendant's property. Likewise, Defendant argues that Plaintiff's medical experts failed to provide factual support for their opinions, which were not based on independently, verifiable facts and "therefore cannot be used to prove either the fact of exposure or resultant injury from exposure."

Defendant cites *Rob–Lee Corp. v. Cushman,* 727 S.W.2d 455, 458, 459 (Mo.App.

E.D.1987); *Wadlow v. Lindner Homes, Inc.*, 722 S.W.2d 621, 625 (Mo.App. E.D. 1986); *Tucker v. Delmar Cleaners, Inc.*, 637 S.W.2d 222, 225 (Mo.App. E.D.1982); and *Hayes v. National Super Markets, Inc.*, 612 S.W.2d 819 (Mo.App. E.D.1981), for the proposition that it is not permissible to supply essential elements of a case by "piling inferences." Accordingly, it argues that Dr. Everett's opinions should not be considered as probative evidence. Likewise, Defendant argues that Plaintiff's medical experts failed to provide factual support for their opinions, and it cites *White v. American Republic Ins. Co.*, 799 S.W.2d 183, 193 (Mo.App. S.D.1990), for the proposition that an expert's opinion cannot be invoked to establish the facts. Each of these cases were decided before the Missouri Supreme Court decided *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852 (Mo. banc 1993) and *Washington By Washington v. Barnes Hosp.*, 897 S.W.2d 611 (Mo. banc 1995). In *Callahan*, one of the defendants claimed on appeal that plaintiff had not made a submissible case relating to the cause of plaintiff's condition. In support, it claimed that the testimony of two of plaintiff's experts, received without objection, should have been excluded or given little or no weight because their testimony was not based on principles generally accepted in the scientific community. The Missouri Supreme Court held that the requirement that expert testimony be based on generally accepted scientific principles related to the admissibility of the testimony rather than submissibility of the case. *Id.* at 860. The court concluded that it was able to find no authority permitting a party to ignore the requirement to object to evidence because it was not based on scientific principles and then "back-door" that issue into the lawsuit under the guise of a sufficiency of evidence argument. *Id.*

In *Barnes Hospital*, defendants claimed that plaintiffs failed to make a submissible case on both negligence and causation; that plaintiffs' liability expert's opinion was not supported by the facts in the record and that they did not establish "but for" causation. Specifically, defendants argued that an expert's testimony could be disregarded, even though admitted without objection, because lack of an evidentiary foundation for the opinion may be considered when determining submissibility. The Missouri Supreme Court held that this position was not well taken because it confused the issue of the admissibility of the opinion testimony with the issue of the submissibility of plaintiffs' case. *Id.* at 615–616. The Court said:

> The distinction between the admissibility of an expert's opinion testimony and the submissibility of a plaintiff's case in reliance thereon was discussed previously in *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 860[4] (Mo. banc 1993). If a question exists as to whether the proffered opinion testimony of an expert is supported by a sufficient factual or scientific foundation, the question is one of admissibility. It must be raised by a timely objection or motion to strike.
>
> Once opinion testimony has been admitted, as any other evidence, it may be relied upon for purposes of determining the submissibility of the case. The natural probative effect of this testimony is a consideration for the jury ....(citations omitted).

*Id.* at 616. Defendant does not contend that the testimony referred to above was admitted over its objection. Rather, it argues that the evidence was legally insufficient to establish causation. We disagree. Defendant's first point is denied.

▪ In its second point on appeal, Defendant contends that the trial court erred in admitting the testimony of two of its former employees, Sylba James Truelove ("Truelove") and John Kelly ("Kelly") regarding their alleged exposure to and injury from TCE while working at Defendant's plant. It argues that their alleged exposure was direct to pure-form TCE in an industrial setting whereas Plaintiff's claimed exposure was over a much shorter

period and through ingestion or skin contact with groundwater, creek water or pond water. Accordingly, Defendant contends that the testimony of Truelove and Kelly did not establish that their experiences were sufficiently similar to those claimed by Plaintiff, and consequently the testimony was irrelevant and constituted reversible error. In support, Defendant cites *Brendel v. Union Electric Light & Power Co.*, 252 S.W. 635 (Mo.1923) and *Budding v. Garland Floor Co., Inc.*, 939 S.W.2d 419 (Mo.App. E.D.1996). In *Brendel*, the Missouri Supreme Court acknowledged that the trial court has large discretion in the admission of such testimony, and that no error occurred in admission of the evidence in that case. 252 S.W. at 640. In *Budding*, the appellate court noted that there is no requirement that the occurrences be identical, and that the similarity of occurrences is a factor to be considered by the trial court when the evidence is offered. 939 S.W.2d at 425. It is apparent, therefore, that the trial court has discretion in the admission of such evidence.

While Defendant does point out significant distinctions between the extent and duration of the exposures of both Truelove and Kelly on the one hand, and Plaintiff on the other, another consideration convinces us that no error occurred requiring reversal.[7] Defendant's only objections to the testimony of Truelove or Kelly, based on the lack of similarity of conditions, occurred prior to each of them testifying. Before Truelove testified, Defendant objected to "his testimony because the facts of his exposure are an exposure at the plant," and that his exposure claim "is not sufficiently similar to the exposure claim by [Plaintiff] to be admissible into the negligence action." Likewise, prior to Kelly's testimony, Defendant objected "to the admissibility of the testimony of [Kelly]," because Kelly "claim[ed] that he was exposed to TCE in an industrial setting, and [Defendant] believe[d] that that [was] not

sufficiently similar circumstances to allow – to prove [Plaintiff's] negligence claim."

■ Each objection necessarily assumed that the witness was not going to testify about anything, which would be competent and relevant. In fact, each witness also testified about Defendant's use of TCE in its manufacturing operations, the manner of its disposal, and the fact that it was disposed of by pumping it onto the ground from storage pits. An objection made to all of the testimony of a witness, some of which is competent, is properly overruled. *Eagleburger v. Emerson Elec. Co.*, 794 S.W.2d 210, 234 (Mo.App. S.D. 1990).

■ Additionally, Defendant's objections, which were made before each witness testified, could be construed as a motion in limine. A ruling on a motion in limine is, at most, a preliminary expression of the trial court's opinion of the admissibility of evidence. *McNeal v. Union Pacific R.R. Co.*, 857 S.W.2d 436, 438 (Mo. App. E.D.1993). Because a trial judge will often decline to make a ruling on a hypothetical situation, and will wait until the evidence is actually presented at trial, it is necessary to make a specific objection at trial to the evidence sought to be excluded by the motion in limine in order to preserve the matter for appellate review. *Id.* By failing to object when the evidence was presented, Defendant failed to preserve the matter for appellate review. Defendant's second point is denied.

■ Defendant's third point relates to evidence of Plaintiff's life expectancy and future earning capacity which it claims was erroneously admitted because there was no evidence that Plaintiff was permanently injured or that her earning capacity was diminished. The point relied on is, therefore, premised on the erroneous admission

---

7. We need not and do not decide whether the distinctions in the length and type of exposure experienced by Truelove and Kelly as opposed to that of Plaintiff would have made their testimony irrelevant.

of evidence of Plaintiff's life expectancy and future earning capacity. In both its statement of facts and the argument section of its brief under this point, Defendant claims that Plaintiff introduced evidence of her life expectancy and her future earning capacity, over its objection. Neither contains a citation to the record supporting those statements. Rule 84.04(h) requires that all statements of fact and argument shall have specific page references to the legal file or the transcript. Compliance with this Rule provides the appellate court with immediate access to the portions of the record containing the evidence and objections upon which an appellant relies. Conversely, if that Rule is not complied with, we are left to peruse the record to determine if the statements are factually supportable. Here, the transcript consists of six volumes containing over 1200 pages. Were we to search this record to determine if the factual claim under this point is accurate, we would effectively become an advocate for Defendant, a task we are not to undertake. *See Thummel v. King,* 570 S.W.2d 679, 686 (Mo. banc 1978). We cannot assume the record contains the evidence and objections relied on by Defendant in support of its third point. The point is, therefore, denied.

The judgment for Plaintiff in the amount of $716,000, and the Judgment Notwithstanding the Verdict on the issue of punitive damages are affirmed.

MONTGOMERY, J., concur.

BARNEY, J., concur.