**JOEL BIANCO KAWASAKI PLUS, et al., Respondents,**

v.

**MERAMEC VALLEY BANK, Appellant.**

No. SC 84046.

Supreme Court of Missouri, En Banc.

July 23, 2002.

Rehearing Denied Aug. 27, 2002.

Michael A. Campbell, Paula Colman, Polsinelli Shalton & Welte, St. Louis, for Appellant.

Thomas M. Blumenthal, St. Louis, for Respondents.

William S. Daniel, St. Louis, for Intervenor.

LAURA DENVIR STITH, Judge.

Meramec Valley Bank ("Bank") appeals a $675,000 judgment entered on a jury verdict against it and in favor of Joel C. Bianco and Joel Bianco Kawasaki Plus, Inc. ("Bianco") on Bianco's claim that the Bank made fraudulent representations in the course of its negotiations over the Bank's replevin of Bianco's motorcycle dealership inventory and receivables. The Bank argues that the trial court had no subject matter jurisdiction over the fraud claim because it should have been brought as a compulsory counterclaim in the Bank's replevin action filed two months before the fraud action was filed. The Bank also argues that Bianco failed to prove its claim of fraudulent misrepresentation.

A court does not lack subject matter jurisdiction over a claim merely because it should have been raised as a compulsory counterclaim in a prior-filed lawsuit. Rather, the compulsory counterclaim rule is an affirmative defense, in the nature of res judicata, that is barred if not timely raised. It is not a stealth defense, and a party cannot sit on its rights under this rule. The trial court did not err in rejecting the Bank's assertion of this affirmative defense, for the Bank failed to assert the defense in the second action until the first action had proceeded to judgment. This was too late on the facts of this case. The Bank's alternative claim that the evidence did not support submission of Bianco's fraud claim is also rejected. Affirmed.

## I. FACTUAL BACKGROUND

Bianco operated a motorcycle and sports equipment dealership in St. Louis County. It borrowed money from the Bank to finance its operations, giving the Bank two promissory notes and putting up its business receivables inventory, furniture and other property as collateral. In 1997, it fell behind in its payments to the Bank and other creditors and sought to sell the business. Although negotiations were still pending, the Bank decided not to wait to assert its claims. On October 3, 1997, it filed an action seeking to recover on the notes and to replevin the collateral (the "replevin action").

On October 6, 1997, the sheriff, a moving company and bank representatives began replevin of Bianco's property. Bianco tried to win a delay from the Bank so that it could consummate the sale of its business and repay the Bank and other creditors from the proceeds. Bianco ultimately agreed to provide additional collateral in order to win two days delay on the replevin. In return, according to Bianco's evidence, the Bank agreed in a "Standstill

Agreement" to halt the replevin so that Bianco and its creditors and the motorcycle manufacturers could arrange a deal for sale of the business. The Bank also agreed to take part in the negotiations and make a substantial effort to resolve the sale of the business. The negotiations were unsuccessful, and the replevin continued. The business was ultimately sold, but not on favorable terms.

The Bank blamed Bianco, but Bianco blamed the Bank and sued it for fraud in December 1997 (the "fraud action"). It presented evidence that the failure to sell the business prior to replevin was due to the Bank's failure to act in good faith, including its decision to proceed with the replevin while negotiations were pending, and that the Bank had not acted in good faith or intended to keep its promises at the time it made them.

The Bank asserted various defenses to this fraud action in its answer filed in February 1998, but it did not assert that the claim was barred by the compulsory counterclaim rule, although it was aware that its replevin action was pending at the time that Bianco filed the fraud action. It also was aware that Bianco did not file any answer to the replevin claim that was pending so that the Bank could obtain the deficiency left after replevining the property at the motorcycle dealership. Due to this failure, Bianco was in default, and on November 24, 1997, the Bank requested and the court entered an interlocutory order of default in the replevin action.

Bianco had not answered in the replevin action because its attorneys were unaware that service had even been made in that action as no return of service had been filed when Bianco's attorney checked the file. Accordingly, it did not receive notice of the order of default. As the Bank alerted no one to the fact that two cases were pending, both remained on file for over a year, until February 1999, when, still without notice to Bianco, a hearing was held in the replevin action on the interlocutory order of default. On March 4, 1999, the court entered a final judgment of default against Bianco in the replevin action. Only then did Bianco receive notice of the prior entry of an interlocutory order of default in the replevin action, and of the entry of the judgment of default. Bianco's motion to set aside the default was denied, and it appealed.

While Bianco's appeal of the replevin action default judgment was still pending, the fraud case was set for trial. Bianco filed an amended complaint, and the Bank filed an amended answer and, *for the first time*, filed a motion to dismiss raising the issues of collateral estoppel, res judicata and compulsory counterclaim. The trial court rejected the motion and the case went to trial. On November 18, 1999, Bianco received a $675,000 judgment on its fraud claim against the Bank. Four months later, the appellate court reversed the trial court's denial of Bianco's motion to set aside the default judgment in the replevin action and remanded it for hearing. *Meramec Valley Bank v. Joel Bianco Kawasaki Plus, Inc.*, 14 S.W.3d 684 (Mo.App. E.D.2000). The Bank here appeals the jury verdict against it in the fraud action.

## II. COMPULSORY COUNTERCLAIM

Bank argues that the trial court was without subject matter jurisdiction over Bianco's fraud claim against it because it arose out of the transaction or occurrence that is the subject matter of the replevin action and, therefore, was required to be brought as a compulsory counterclaim in that action under Rule 55.32(a), which states:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any

opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

This Court need not reach the issue whether the fraud claim was a compulsory counterclaim to the replevin action. Assuming that it was, we reject the Bank's contention that Bianco's failure to assert it in the replevin action deprived the court in the fraud action of subject matter jurisdiction over the fraud claim. The Bank cites no cases of this Court holding that a compulsory counterclaim is a matter of subject matter jurisdiction. To the contrary, this Court's cases have repeatedly recognized that the clear purpose of Rule 55.32 and its predecessors is "to serve as 'a means of bringing all logically related claims into a single litigation, through the *penalty of precluding the later assertion of omitted claims.*'" *State ex rel. J.E. Dunn, Jr. & Associates, Inc. v. Schoenlaub*, 668 S.W.2d 72, 75 (Mo. banc 1984), *quoting, Cantrell v. City of Caruthersville*, 359 Mo. 282, 221 S.W.2d 471, 474 (1949) (emphasis added).

■ As discussed further below, this is analogous to the basis for the doctrine of *res judicata.* For this reason, this Court has often spoken of the underpinnings of the compulsory counterclaim rule utilizing terms usually associated with *res judicata,* noting that a particular claim was "barred" by the failure to assert it as a counterclaim.[1] As the court of appeals stated in taking this approach in *Beasley v. Mironuck*, 877 S.W.2d 653, 656 (Mo.App. E.D. 1994):

> The compulsory counterclaim rule is simply the codification of the principles of res judicata and collateral estoppel. Claims and issues which could have been litigated in a prior adjudicated action are precluded in a later action between the same parties or those in privity with them.

*Id.* at 656. *See also Elam v. City of St. Ann*, 784 S.W.2d 330, 333 (Mo.App. E.D. 1990) (*res judicata* and compulsory counterclaim, although not identical, "overlap to the extent that one commentator refers to the compulsory counterclaim as a form of 'claim preclusion by rule' "). Even the Bank uses this terminology ("the Compulsory Counterclaim Rule *requires* that parties bring all related claims before a single court at the same time *barring* them in any subsequent action ...") (emphasis added).[2]

Missouri is by no means alone in treating the compulsory counterclaim rule as a special application of the principles of *res judicata.* Rule 55.32 is based on Federal

1. *See, e.g., Ollison v. Village of Climax Springs,* 916 S.W.2d 198, 201 (Mo. banc 1996) ("This Court holds that the judgment in Case I is not res judicata with respect to this action because the land involved in Case I was separate and distinct from the land involved in this action. For the same reason, the Village's argument that plaintiffs' claim was barred by failure to assert it as a counterclaim in Case I has no merit."); *Schoenlaub,* 668 S.W.2d at 75 ("suit is barred as [it was] a compulsory counterclaim to the hospital's original suit ...".); *Black v. Sanders,* 414 S.W.2d 241, 244 (Mo.1967) (under circumstances of that case, failure to file a counterclaim should not act as a bar); *Brinkmann v. Common School Dist. No. 27 of Gasconade County,* 255 S.W.2d 770, 771 (Mo. banc 1953) (failure of school teacher to interpose counterclaim for salary in suit by school district to enjoin school teacher from teaching or attempting to teach school for year in question precluded teacher from thereafter maintaining action for salary).

2. While compulsory counterclaims are not listed in Rule 55.08, the language of the rule itself states that the rule's list of affirmative defenses is not all-inclusive.

Rule 13(a). *See Cantrell,* 221 S.W.2d at 474 (1949) (construing former Section 73, now Rule 55.32); Fed.R.Civ.P. 13(a). Where, as here, the Missouri and federal rules are essentially the same, federal precedents constitute persuasive, although not binding, authority. *Giddens v. Kansas City Southern Ry. Co.,* 29 S.W.3d 813, 820 (Mo. banc 2000); *Kingsley v. Burack,* 536 S.W.2d 7, 11 (Mo. banc 1976). Many federal courts have noted that the principles behind the compulsory counterclaim rule are those that are behind the doctrine of *res judicata,* that both serve as means of avoiding piecemeal litigation, and that both can be waived. As the Seventh Circuit aptly noted in discussing the interplay between these two fundamental doctrines of modern federal procedure:

> Despite the impression one might get from the name of the doctrine, no one is "compelled" to present a compulsory counterclaim. Only a litigant that wants to avoid a later defense of preclusion need do so. The definition of a compulsory counterclaim—a claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim"—mirrors the condition that triggers a defense of claim preclusion (res judicata) if a claim was left out of a prior suit. The aspect of preclusion known as "merger and bar" ... prevents the plaintiff in the first suit from later making any claim that arose out of the same transaction but was omitted from the initial suit....

*Publicis Communications v. True North Communications Inc.,* 132 F.3d 363, 365–66 (7th Cir.1997) (citations omitted). The Seventh Circuit continued:

> Rule 13(a) establishes that a defendant's omission has the same consequences as a plaintiff's ... Whether this is strictly an application of claim preclusion may be debated, ... but both the scope of the doctrine and its rationale are the same as those of claim preclusion, and most of the time the label is inconsequential.

*Id.* Other federal cases take a similar approach. *See Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974) ("A counterclaim which is compulsory but is not brought is thereafter barred ...".); *Kolb v. Scherer Bros. Fin. Servs. Co.,* 6 F.3d 542, 544–45 (8th Cir.1993) (co-defendant who had a mechanics lien on property "cannot avoid res judicata by styling his RICO action as a permissive cross-claim" because the claim should have been raised as a compulsory counterclaim in previous state court actions).

 A few federal courts, and a few decisions of this Court, have treated the doctrine as one of waiver and estoppel, or as a mix of waiver and bar, rather than as a strict issue of *res judicata.*[3] Waiver principles are similar to those of *res judicata,* however; in both cases the person seeking to assert the doctrine is required to timely raise it or it is lost. None of our

---

**3.** *See, e.g., Oates v. Safeco Ins. Co. of America,* 583 S.W.2d 713, 717 (Mo. banc 1979) ("The failure of Oates to assert the tort cause of action against Coad as a counterclaim waives Oates's cause of action in tort against Coad ..."); *Kane v. Magna Mixer Co.,* 71 F.3d 555, 562–63 (6th Cir.1995) ("In most instances, application of either res judicata or waiver principles will yield the same result, but ... we prefer the flexibility of a waiver analysis to the more rigid rules applicable to res judica-

ta"); *Baker v. Southern Pacific Transp.,* 542 F.2d 1123, 1126 (9th Cir.1976) ("This circuit adheres to the rule that '[under] Rule 13(a) a party who fails to plead a compulsory claim against an opposing party is held to have waived such claim and is precluded by res judicata from bringing suit upon it again'."). *See also* 3 Moore's Federal Practice section 13.12(1) (noting some commentators and federal courts find it "more appropriate to apply Rule 13(a) on an estoppel or waiver basis").

decisions treat the matter as one of subject matter jurisdiction as the Bank argues this Court should do here. To the extent that some of the court of appeals cases cited by the Bank can be read to suggest that the compulsory counterclaim rule affects a court's subject matter jurisdiction, they are incorrect and should no longer be followed.[4]

The analogous treatment of the doctrines of compulsory counterclaim and *res judicata* makes sense, for the principles underlying both *res judicata* and the compulsory counterclaim rule serve the similar purpose of judicial economy to resolve all disputes arising out of the same transaction or occurrence as expeditiously and economically as possible. *See State ex rel. Buchanan v. Jensen*, 379 S.W.2d 529, 531 (Mo. banc. 1964) ("[T]he general purpose of the [compulsory counterclaim] rule ... is to avoid a multiplicity of suits and to dispose of litigation more expeditiously and properly."); *Doherty v. McMillen*, 805 S.W.2d 361, 362 (Mo.App. E.D.1991) ("[T]he policies behind res judicata: relieving parties of the cost and vexation of multiple lawsuits; conserving judicial resources; and encouraging reliance on adjudications") (citing *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)).

For this reason, in deciding whether Bianco was barred from pursuing its fraud action because of its failure to earlier plead its fraud claim as a compulsory counterclaim, the *res judicata* principles that this Court has applied in cases such as *66, Inc. v. Crestwood Commons Redevelopment Corp.*, 998 S.W.2d 32 (Mo. banc 1999), disallowing the untimely assertion of a party's

*res judicata* defense, are equally applicable.

In *66, Inc.* the City of Crestwood entered into a contract giving Crestwood Commons (CC) the right of eminent domain over property belonging to 66, Inc. CC filed a "condemnation action" against 66, Inc. in 1989, but abandoned the condemnation before trial. *Id.* at 37. In response, 66, Inc. filed a motion for an award of interest as part of the condemnation action. *Id.* It ultimately prevailed on its claim in 1993, but because CC turned out to be a shell corporation, it was unable to collect on its judgment. *Id.*

In November 1992, while the above motion for interest was still pending, 66, Inc. filed a separate "damages action" against both CC and against Hycel and Schnuck, two corporations that it alleged were alter ego's of CC, seeking damages caused by CC's abandonment of the condemnation. *Id.* at 36, 37. In 1994, while the damage action was still pending, 66, Inc. filed another action against Hycel and Schnuck, this time alleging that they were guarantors of CC and so should be responsible for the interest that CC owed 66, Inc. for abandoning the condemnation. *Id.* at 38. The trial court dismissed this "guaranty action" with prejudice in August 1994. *Id.*

CC and the other defendants made no motion to consolidate the damage and guaranty actions at any time prior to dismissal of the guaranty action. But, in May 1995, "long after a judgment was entered in the 'guaranty' action in August 1994 and even longer after the 'guaranty' action was first filed in January 1994," *Id.* at 43, they

---

4. *See Choate v. Hicks*, 983 S.W.2d 611, 613 (Mo.App. S.D.1999) ("A court lacks jurisdiction to decide a later action taken on a matter if that action should have been brought previously as a compulsory counterclaim"); *Rell v. Burlington Northern R. Co.*, 976 S.W.2d 518,

520 (Mo.App. E.D.1998) (same); *Evergreen Nat. Corp. v. Killian Const. Co.*, 876 S.W.2d 633, 635 (Mo.App.W.D.1994) (same). *See also Neenan Co. v. Cox*, 955 S.W.2d 595, 599 (Mo.App. W.D.1997).

moved to dismiss 66, Inc.'s damage action (the second lawsuit) on the basis that it arose out of the same transaction and occurrence as the guaranty action and, since the guaranty action had been finally concluded, "res judicata bars the claim for damages." *Id* at 42.

This Court reasoned that *res judicata* operates as an affirmative defense, which, if properly invoked, will prevent litigation of a claim arising out of the same transaction or occurrence that is the subject of the earlier judgment. *Id.* at 42. But, this Court held, defendants should not have been allowed to assert the defense of *res judicata* because:

> When 66, Inc. filed the "guaranty" action while the claim for damages was pending, Crestwood Commons chose to defend the simultaneous actions rather than to assert that 66, Inc. was splitting its claim or to request consolidation. Crestwood Commons could hardly complain that it would be unduly burdened if the trial court addressed the merits of this action and could not fairly argue for summary judgment for the sake of judicial economy. Although Crestwood Commons was aware of the present action at the time the "guaranty" claim was filed, it did not assert the *res judicata* defense until nine months after the "guaranty" action went to judgment. *It would be unjust to allow Crestwood Commons to choose to defend both actions, wait until one of them went to judgment and then argue that it is res judicata to the other.*

*Id.* at 43 (emphasis added). This was true even though CC finally raised the defense in its answer to 66, Inc.'s amended petition, for "[r]es judicata is not a stealth defense that can be held in reserve ...". *Id.* It stressed the importance of timely raising *res judicata:*

> As an affirmative defense, *res judicata* must be timely raised.... Here the defendants had the opportunity to call to the trial court's attention the pendency of purportedly related claims. Had they done so, under Rule 66.01 [consolidation of civil actions] the trial court could have consolidated the claims and avoided the multiplicity of litigation that these parties now protest by invoking *res judicata.*

*Id.* at 42.[5] The Court therefore refused to apply *res judicata.*

■ This Court's reasoning in *66, Inc.* is equally applicable to this case, in which the Bank similarly slept on its affirmative defense of compulsory counterclaim until after it had won a default judgment in the replevin action. Only then, fifteen months after it filed its initial answer in the fraud action, did it file an amended answer first asserting that the fraud claim had been a compulsory counterclaim in the replevin action. In so doing, it tried to have its cake and eat it too, for it was aware that, by delaying its pleading of that defense until after the replevin claim had proceeded to judgment, it was impossible for Bianco to assert the fraud claim as a counterclaim in the replevin action.

As in *66, Inc.,* this was too late. The Bank chose to prosecute and defend both actions separately, although aware that both were pending and allegedly involved the same transaction or occurrence and despite its opportunity to assert the defense some fifteen months earlier. Had it asserted the defense before it received its

---

5. *See also Heins Implement Co. v. Missouri Highway & Transp. Com'n,* 859 S.W.2d 681, 685 (Mo. banc 1993) ("The facts that give rise to res judicata, by their very nature, are known to the defendant from the inception of a lawsuit. Accordingly, a defendant should not be able to hold preclusion in reserve as a 'stealth defense' long after the time for raising substantive defenses has passed. *See Rule 55.27(f).*").

default judgment in the replevin action, the purpose of the rule would have been served, for the two actions could have been consolidated and piecemeal litigation would have been avoided. Given these facts, which mirror those of *66, Inc.,* the trial court did not abuse its discretion in barring the Bank from asserting its compulsory counterclaim defense.

Finally, the Bank notes that, in its decision on appeal of the replevin action, the court of appeals found that the trial court had abused its discretion in refusing to set aside the default judgment the Bank won against Bianco and remanded the replevin action to the trial court. That case is now stayed pending the outcome of this appeal. The Bank argues that, for this reason, if this Court finds that Bianco's fraud claim was not barred by the compulsory counterclaim rule, it should nonetheless reverse the judgment and remand it for consolidation with the again-pending, but stayed, replevin action.

But, because the fraud action proceeded to verdict while the default judgment was on appeal, to consolidate the cases now would not serve the interests of judicial economy. To the contrary, it would result in piecemeal litigation. Moreover, the reason that the replevin action has been stayed is that the result of this appeal may moot the issues raised therein. The Bank is seeking to avoid this mooting of its claim by getting another bite at trying the fraud action. To do so would simply further increase the multiplicity of litigation involving these claims. Given the posture of the proceedings between these parties, and the principles behind *res judicata* and the compulsory counterclaim rule, this Court leaves the parties as they are now, having tried the suits separately.

### III. *FRAUDULENT REPRESENTATIONS CLAIM*

#### A. *Sufficiency of the Evidence*

The Bank argues that Bianco failed to make a submissible case on many of the elements of its fraudulent misrepresentation claim. The essential elements of such a claim are well-established:

> [i]t [is] essential . . . to establish a representation; its falsity; its materiality; the speaker's knowledge of its falsity; his intent that it be acted on by the hearer and in the manner reasonably contemplated; the hearer's ignorance of its falsity; his reliance on its truth; his right to rely thereon; and his consequent and proximate injury.

*John T. Brown, Inc. v. Weber Implement & Auto. Co.,* 260 S.W.2d 751, 755 (Mo. 1953). *Accord, State ex rel. PaineWebber, Inc. v. Voorhees,* 891 S.W.2d 126, 128 (Mo. banc 1995).

Bianco's fraudulent representation claim was submitted in Instruction No. 7:

> Your verdict must be for plaintiffs if you believe:
>
> First, defendant induced plaintiff into providing additional collateral to defendant based on the representations that defendant would:
>
> (a) not demand further additional collateral; and
>
> (b) allow the parties to meet with the manufacturers and the proposed buyer to complete the sale of the business; and
>
> (c) stop the replevin and taking of plaintiff Joel Bianco Kawasaki Plus, Inc.'s inventory if the meetings on October 7 and 8, 1997 occurred and the negotiations for the sale of the business proceeded in good faith; and
>
> (d) attend the meetings and make a substantial effort to resolve the sale of the business; and
>
> (e) not recommence the replevin and taking of the inventory without advising

plaintiff Joel Bianco that a resolution cannot be achieved and the defendant was going to continue the replevin and taking; intending that plaintiffs rely upon such representations in providing the additional collateral, and

Second, the representations were false, and

Third, defendant knew that the representations were false at the time they were made, and

Fourth, the representations were material to the plaintiffs, and

Fifth, plaintiffs relied on the representations in providing the additional collateral, and

Sixth, as a direct result of such representation the plaintiffs were damaged. unless you believe plaintiffs are not entitled to recover by reason of Instruction Number —.

The Bank argues that some of the five "misrepresentations" set out in Paragraph First were not even made, that those that were made were, at most, expressions of opinion or promises as to what the Bank hoped or wanted to do in the future, rather than statements of existing fact, and that in any event they were not false, were not material and Bianco could not reasonably have relied on them and did not suffer damages as a result of them.

In so arguing, Bank cites to the substantial evidence it adduced below supporting its contentions. But, its argument fails to adequately take into account the standard of review. An appellate court will consider the evidence "in the light most favorable to the verdict, giving the prevailing party all reasonable inferences from the verdict and disregarding the unfavorable evidence." *Nemani v. St. Louis University*, 33 S.W.3d 184, 185 (Mo. banc 2000). While a court will not "supply missing evidence or give a plaintiff the benefit of unreasonable, speculative, or forced inferences," *Lewis v. FAG Bearings Corp.*, 5 S.W.3d 579, 584 (Mo.App. S.D. 1999), it will not overturn a verdict unless there is a complete absence of probative facts to support it. *Id.* So considered, the evidence submitted by Bianco, including Mr. Bianco's own testimony, that of the manufacturers with whom he tried to negotiate an agreement, and a document that the parties referred to below as "the Standstill Agreement," supported the verdict.

As to whether the representations were made as representations of existing fact, Bianco testified that the Bank promised that, in return for Bianco's October 6, 1997, agreement to provide it with a security interest in Bianco's boat, a deed of trust on his home, and $25,000 he borrowed from his mother as additional collateral, the Bank would not demand any more collateral and would allow the parties to meet with the manufacturers and the proposed buyer to complete the sale of the business on October 7 and 8. Lawyers who attended the October 7 and 8 meetings similarly testified that the purpose of the meetings was to arrange the sale of the business and use the proceeds towards the debt. Further, the Standstill Agreement stated that "in exchange for providing this additional security," which Bianco agreed to and did provide on October 6, 1997, the Bank would permit the meeting with creditors and potential buyers.

Several witnesses, including a manufacturer's attorney and a Bank vice-president, testified that the Standstill Agreement and other correspondence led them to believe that the Bank was willing to soften its demands and to make a substantial, concerted effort to resolve the matter, including accepting an amount less than the full debt, and that these were positive statements of the Bank as "what the Bank was prepared to do," not vague future promises.

The Standstill Agreement and the testimony of these witnesses also supported Paragraph First's submission that the Bank agreed that it would suspend the replevin and the taking of Bianco's inventory in the event the meetings on October 7 and 8 for the sale of the business proceeded in good faith. It also supported the jury's finding that all of Paragraph First's five representations were false and that the Bank knew they were false when it made them.[6] Specifically, participants in the October meetings testified that the Bank's only intention at the meeting on October 8 was to demand more money rather than to allow the parties to meet with the manufacturers and the proposed buyer in order to facilitate the sale of the business.

Witnesses, including a deputy sheriff, testified that the Bank had trucks waiting outside during the meeting in order to continue with the replevin, that the Bank did continue with it before the negotiations broke up, and that the Bank's actions undermined the good faith negotiations between the several interested parties and were the reason the negotiations failed. Finally, there was evidence that the Bank later misrepresented that various manufacturers had agreed at the meeting that the Bank should get more money, a claim that some manufacturers' representatives who had attended the meeting said was "absurd, we had not made any deal."

At least one witness testified that she believed the Bank's actions were in bad faith, and another testified to the effect that he was shocked by the Bank's behavior. Several witnesses testified that the Bank was unyielding in its demands for additional collateral, despite having offered "to make a substantial effort with all parties concerned to resolve this matter."

The jury reasonably could have found from the Bank's actions and demands, which some participants at the October meetings found to be "outrageous" and "ridiculous," that it never intended to fulfill its promise to make a "substantial effort" in resolving the matter, to cease the replevin, to allow the meetings to proceed in order to complete the sale of the business, and to not continue the replevin without notice, and that it knew its representations were false at the time it made them.

This same evidence supports the jury's findings that the representations were material and that Bianco relied on them. The test for reliance is whether Bianco, under the circumstances, was justified in relying upon the representations. *Oshia v. E.A. Strout Realty Agency, Inc.*, 418 S.W.2d 99, 101 (Mo.1967). The jury was entitled to reject the Bank's apparent claim that Bianco just decided to pledge the deed on his home, his boat, and sums of money from his mother in return for vague and unenforceable promises by the Bank. It could well have concluded that, to the contrary, the Bank represented it would forestall the replevin and make substantial efforts to resolve Bianco's financial problems and that these representations were material and were reasonably relied on by Bianco in volunteering additional collateral. "A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so." *Grossoehme v. Cordell*, 904 S.W.2d 392, 397 (Mo.App. W.D.1995).

Additionally, the testimony supported Bianco's claim that the close of the sale of

---

6. "The falsity of the representation must be determined as of the time it was made and as of the time it was intended to be and was relied on." *Emerick v. Mutual Ben. Life Ins. Co.*, 756 S.W.2d 513, 519 (Mo. banc 1988), *citing, Powers v. Shore*, 248 S.W.2d 1, 6 (Mo. banc 1952); *Kiechle v. Drago*, 694 S.W.2d 292, 294 (Mo.App. W.D.1985).

Bianco's business, as well as paying off the manufacturers, would have occurred but for the actions of Bank. Bianco also testified as to the resulting loss of his business' good will and of his personal and professional reputation in the sports vehicle community.

### B. Instructional Error

■ Finally, the Bank contends the trial court erred in overruling its objections to Bianco's verdict directing instruction, Instruction No. 7, because that instruction fails to set forth the action of Bianco to which the Bank's misrepresentations were allegedly material. But, although the Bank did request other changes to Instruction No. 7 at the instruction conference, it did not raise this issue below. Had it done so, the trial court could have corrected Instruction No. 7 before submission. That is why Rule 73.03 requires contemporaneous objections to instructions. Bank also claims on appeal that the jury was confused by the multiple submissions of representations, but similarly failed to raise this objection below. Failure to object to the instruction fails to preserve the claim on appeal. *Lopez v. Three Rivers Elec. Co-op., Inc.*, 26 S.W.3d 151, 161 (Mo. banc 2000). In any event, the jury could not have been misled, as the entire focus of the trial was whether the representations were made and were material to Bianco's decision to give the Bank additional collateral.

For all of the reasons set out above, the judgment is affirmed.

LIMBAUGH, C.J., WHITE, WOLFF, BENTON and PRICE, JJ., and HARDWICK, Sp. J., concur.

RICHARD B. TEITELMAN, J., not participating.