**Duncan and Robin CRAYCROFT,**
**Respondents,**

v.

**Lynn and Betty CARLTON, husband**
**and wife, and Lynn Carlton, as Trus-**
**tee of the Revocable Trust Agreement**
**of Lynn N. Carlton, Appellants.**

**No. SD 30224.**

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 23, 2010.

Brett W. Roubal, Baird, Lighter, Millsap & Harpool, Springfield, for Appellants.

John O. Newman, Newman Law Firm, Springfield, for Respondents.

DANIEL E. SCOTT, Chief Judge.

This appeal challenges the sufficiency of evidence to support a $22,564.37 bench-tried judgment for negligent misrepresentation. We thus assume as true the evidence and inferences favoring the result and ignore contradictory evidence. *Artilla Cove Resort, Inc. v. Hartley,* 72 S.W.3d 291, 293 (Mo.App.2002).

## Facts and Background

Dr. and Mrs. Lynn Carlton (Sellers) owned and lived in their Catalina Circle home from 1976 to 2004, during which time their basement suffered at least three water intrusions. A 1977 problem was traced to improperly installed drainage tiles, which Sellers repaired. An exterior pipe broke in 1980 or 1981, causing water to leak through the foundation and Sellers to replace the carpet. In July 2000, water entered through a seam between the foundation and a basement wall. Sellers had the seam caulked, dried the carpet, and replaced the pad.

Sellers knew their neighborhood's history of drainage and flooding problems, which were not eliminated by a culvert built during the 1980s.[1] Neighbors testified that Dr. Carlton knew that both of his next-door neighbors' basements flooded, and one recalled Dr. Carlton complaining that, "We're—we've been flooded again."

Sellers listed the home for sale in 2004, omitting most of the above from their disclosure statement, and answering these specific questions as follows:

Do you know of any past or present drainage or flood problems affecting the property or immediately adjacent properties? *No*

. . .

Does the property have a sump pump? *No*

Has there ever been any water leakage, seepage, accumulation, or dampness within the basement or crawlspace? *Yes* If "Yes," describe in detail: *4 years ago moisture seeped into½ of basement, none since*

Have there been any repairs or other attempts to control any water or dampness problem in the basement or crawlspace? *Yes* If "Yes," describe the location, extent, date, and name of the person who did the repair or control effort: *Caulked around junction between basement wall & floor*

Robin and Duncan Craycroft (Buyers) walked through the home several times before they bought it. They saw no signs of basement moisture, nor did their home inspector. Within days after Buyers moved in, the basement flooded during a rain. Standing water covered the whole

1. Sellers' realtor, who previously lived near Sellers' home, described the pre-culvert neighborhood floods as the "Catalina River."

floor, damaging or destroying Buyers' belongings. There was a second flood within days, and others in following years. Buyers repeatedly incurred clean-up expenses, and ultimately hired a contractor to install drainage tiles and sump pumps to solve the problem.

Buyers sued Sellers on several theories, including negligent and fraudulent misrepresentation. Sellers admitted some of their non-disclosures at trial. Mrs. Carlton suggested that these were oversights, but Dr. Carlton testified that Sellers were following their realtor's advice.[2] The trial court found for Buyers on their negligent misrepresentation claim, awarded damages of $22,564.37, and denied all other relief.

## Principles of Review

█ The elements of a negligent misrepresentation claim are: (1) the speaker supplied information in the course of his business; (2) due to the speaker's failure to exercise reasonable care, the information was false; (3) the speaker intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) the listener justifiably relied on the information; and (5) as a result of such reliance, the listener suffered pecuniary loss. *Allen Quarries, Inc. v. Auge,* 244 S.W.3d 781, 785 n. 2 (Mo.App.2008).

Sellers contend that there was insufficient evidence of elements #2 (Point I) or #4 and #5 (Point II). In assessing these claims, we accept all evidence and permissible inferences consistent with the judgment; disregard contrary evidence; defer to the trial court's ability to judge witness credibility; refuse to reweigh the evidence; and must affirm the judgment unless no substantial evidence supports it. *See Artilla Cove Resort,* 72 S.W.3d at 293.

## Point I

█ Sellers' claim that no evidence supports element #2 seems plainly contradicted by their admittedly inaccurate disclosures. They argue, however, that the trial court's denial of "all other relief," including a fraud claim, proves that the court did not believe Sellers' admissions that they knew their disclosures were false, "and absent that disbelieved testimony, no other substantial evidence exists" to support element #2.

We admire Sellers' ingenuity, but are not convinced. The issue is not whether the trial court could or should have found actionable fraud, nor whether that court erred in any other non-appealed ruling, but whether any evidence supported its implicit finding that Sellers should have known their disclosures were false. Since Sellers' own testimony supports that conclusion, their Point I challenge to the sufficiency of the evidence fails.

## Point II

█ Point II makes a two-pronged argument that Buyers did not prove that their pecuniary losses resulted from reliance on Sellers' misstatements. As to reliance, Sellers note that Buyers viewed the home several times and hired their own inspector. We are guided in this regard by our observations in *Artilla Cove Resort:*

> In *Consumers Cooperative Association v. McMahan,* 393 S.W.2d 552, 556[6] (Mo.1965), our Supreme Court stated that "where a party makes his own independent investigation, he will be presumed to have been guided by what he learned and the conclusions he reached and will not be permitted to say that he relied on misrepresentations of another and that he was deceived thereby."

**2.** The realtor denied this for the most part, but admitted that he advised Sellers not to disclose the 1977 event because that problem had been fixed.

However, we have recognized three exceptions to the general rule enunciated in *Consumers Cooperative Association. Iota Management Corp. v. Boulevard Inv. Co.*, 731 S.W.2d 399, 413 [10, 11] (Mo.App.1987). First, if the party making the independent inspection makes only a partial inspection and relies on the misrepresentations as well as the inspection, he may maintain an action for fraud. *Second, the buyer is entitled to rely on the representation when he lacks equal footing for learning the truth where the facts are peculiarly within the knowledge of the party making the representation and are difficult to ascertain.* Third, even if the parties stand on equal footing, if the seller makes a distinct and specific representation, the buyer has the right to rely on the representation. [Emphasis added.]

72 S.W.3d at 299–300. At least the second and third exceptions fit this case, and as to the second, these words are apropos:

> [I]n the vast majority of cases, a seller, who has lived in a property ... would have knowledge which is superior to a buyer's knowledge concerning the property's condition. In this case, for example, sellers may have lived in the house through some rainstorms. Buyers, in contrast, sent an inspector into the house for a few hours, an inspector who may or may not have been in the house while it rained. Obviously, the sellers would have a better vantage position of the leakage problem and the severity of the condition.

*Colgan v. Washington Realty Co.*, 879 S.W.2d 686, 691 (Mo.App.1994).

Sellers also argue that their 1977 and 1980–81 incidents "were unrelated to" any later problems; thus, Buyers' damages were "not based on the omission of those two events from the disclosure." Yet these were not Sellers' only omissions. Mr. Craycroft testified that Buyers relied on Sellers' disclosures, and specifically that Sellers did not know of any drainage or flood problems at their home or adjacent properties. He testified that Buyers would not have bought the house, or not at that price, had they known its water history and that of adjacent areas. The trial court was entitled to believe this testimony, especially when Buyers had to spend large sums to clean up and remedy their water problems.

The evidence viewed favorably to the judgment thus supports these elements of Buyers' claim as well. Accordingly, we deny Point II and affirm the judgment.

BATES and FRANCIS, JJ., concur.