

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

SHAYNA VEAZIE-GALLANT )  No. ED109037
)
    Respondent, )
)
vs. )  Appeal from the Circuit Court of
)  the City of St. Louis
DERYL BROWN, JR., )
)  Honorable Joan L. Moriarty
    Defendant, )
and )
)
AMANI INVESTMENTS, LLC, )
)
    Appellant. )  Filed: March 23, 2021

## Introduction

Amani Investments, LLC ("Appellant") appeals the entry of judgment and award of

$56,987.48 for Shayna Veazie-Gallant ("Respondent") following a bench trial.  Appellant

purchases, rehabilitates, and sells real estate.  In 2018, Appellant sold one of two adjacent lots it

owned on Ohio Avenue in the City of St. Louis to Respondent.  Shortly after closing, rain leaked

into the house, causing water damage, and requiring extensive repairs.  Additionally, surveying

issues emerged regarding ownership of the fence between the lots and the neighboring carport's

encroachment on Respondent's property.

Respondent brought ejectment, trespass, and declaratory judgment actions regarding the

carport and fence disputes, negligent representation and fraud claims regarding the condition of

the house, claimed Appellant violated Mo. Rev. Stat. § 407.025 (2018) (the "Missouri Merchandising Practices Act" or "MMPA")[1] in selling the house and appliances to Respondent, and asked the court to pierce Appellant's corporate veil. Appellant brought counterclaims of tortious interference for Respondent's statements to the St. Louis Development Corporation ("SLDC"), prospective buyers, and realtors about Appellant's business practices; slander of title regarding the parties' dispute over the neighboring carport's placement; and trespass regarding the fence dispute. The trial court entered judgment for Respondent in the carport and fence disputes, negligent misrepresentation, and MMPA claims. The trial court found Appellant was not liable for fraud and did not pierce the corporate veil but denied Appellant's counterclaims.

Appellant raises three points on appeal. In Point I, Appellant argues the trial court erred by finding Appellant liable for negligent misrepresentation. In Point II, Appellant argues the trial court misapplied the law in calculating damages. In Point III, Appellant argues the trial court erred by finding Respondent's communications with the SLDC did not constitute tortious interference.

We affirm.

**Factual and Procedural Background**

Deryl Brown owns and operates Amani Investments, LLC. Brown has fifteen years' experience in purchasing, refurnishing, and selling real estate. In 2014, Appellant purchased a four-unit apartment building on Ohio Avenue in the City of St. Louis. In 2017, Appellant divided the land into two parcels and turned the building into a duplex. Appellant hired contractors to gut the building and remodel it for sale. On July 7, 2018, Respondent contracted to purchase one duplex from Appellant for $220,000. The parties also entered an appliance sale contract for the refrigerator, oven range, microwave, and wine cooler to come with the house.

---

[1] All statutory references are to RSMo (2018), unless otherwise indicated.

Respondent discovered the refrigerator's feet were damaged and requested a replacement. The replacement refrigerator was also damaged but was not replaced because Appellant canceled the replacement order and did not transfer ownership of the warranties to Respondent.

Appellant gave Respondent a "Seller's Disclosure Statement" (the "Disclosure") outlining Appellant's knowledge of the condition of the property. The Disclosure stated the roof was two years old; Appellant did not know of problems with the building's footing, foundation, sub-floor, walls, construction, porch, or load bearing components; the house had been fully gutted and rehabbed; there were no water leaks or accumulation; and no water control efforts had been made. The Disclosure stated it was based on Appellant's personal knowledge and advised Respondent to seek a professional inspection.

Respondent hired an inspector to review the house's condition. The inspector discovered the roof over the sunroom was about ten years old, there was "blistering" on the sunroom's wall from water damage, and new floors and paint in the basement prevented the inspector from determining if there was water penetration. Appellant performed twenty-two repairs based on the inspection and the parties closed the sale on August 1, 2018. Within a week of closing, rain severely damaged Respondent's property, penetrating through the roof into the master bedroom, the sunroom, and the basement.

Respondent sued on August 7, 2018 and spent $3,925 to partially repair damage to the foundation and sunroom. Relevant to this appeal, the lawsuit alleged negligent misrepresentation for the water damage dispute, MMPA violations for the water damage and problems with the appliances, and ejectment and trespass, alleging Appellant's neighboring carport encroached onto Respondent's property and Appellant wrongfully moved the fence between the properties into Respondent's yard. Respondent also filed a notice of *lis pendens* with the Recorder of

3

Deeds for the City of St. Louis for the neighboring property because of the carport and fence boundary dispute.

In February 2019, Respondent emailed the SLDC and claimed Appellant moved the boundary fence between the properties, the neighboring carport encroached on her property, Appellant defrauded Respondent's surveyor ("THD"), and Appellant lied on the Disclosure about the extent of the house's rehabilitation and water problems. Respondent also stated she had a restraining order against Brown because he was stalking and harassing her. The SLDC controls tax abatement grants to companies that rehabilitate properties in St. Louis. The SLDC has not granted Appellant any tax abatements since Respondent's email, allegedly preventing Appellant from purchasing at least one property in the City of St. Louis.[2] The trial court found parts of Respondent's email were untrue: Appellant did not interact with THD until June 2019 – four months after Respondent's email – and Respondent never had a restraining order against Brown.

In July 2019, Respondent hired an expert to survey the water damage to her house. The inspection revealed damage to the roof above the sunroom, rotting plywood, improperly installed shingles, a rotting support post for the roof was concealed with caulk, rotting wood beneath the master bedroom door indicating water flow into the walls, warped trim boards, siding damage, no sealant between vertical and horizontal soffits, water flow directly into the basement, and sinking ground around the air conditioner, which likely contributed to the flow of water into the building.

During discovery, the trial court sanctioned Appellant for failing to comply with discovery orders. The sanctions included the court holding four adverse inferences against

---

[2] Appellant alleged Respondent's communications with the SLDC prevented Appellant from purchasing a property on Salena St. in the City of St. Louis. The trial court's judgment granted Respondent an inference her conduct did *not* prevent the purchase as a discovery sanction against Appellant.

Appellant. First, the trial court inferred Appellant's financial records would have shown Brown intermingled his personal funds with Appellant and Appellant was undercapitalized. Second, the trial court inferred Appellant resisted disclosing the contractors who worked on the house because the contractors would have testified they were to "perform only those repairs necessary to renovate [the house] sufficiently to comply with the architectural plans, ensure the final product passed inspection, and was aesthetically pleasing; nothing more." Further, the trial court inferred "where problems were discovered that could be covered up or temporarily repaired, *rather than permanently corrected*, the contractors would do the former." (emphasis added). Third, the trial court inferred Appellant owed money on the neighboring house and its sale would not have yielded as much profit as Appellant claimed. Fourth, the trial court inferred Respondent's lawsuit and *lis pendens* claim did not prevent Appellant from purchasing another property in St. Louis.

The trial court entered judgment for Respondent on her ejectment, trespass, negligent misrepresentation, and MMPA claims and denied Appellant's tortious interference, slander of title, and trespass claims. This appeal follows. We will provide additional facts and procedural history as necessary to address the parties' arguments.

**Standard of Review**

"We review this court-tried case under the standard articulated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)." *Brasher v. Craig*, 483 S.W.3d 446, 450 (Mo. App. W.D. 2016). We will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id*. We review the evidence in the light most favorable to the judgment, accept it as true, and disregard contradictory evidence. *Id*. (citing *Lowe v. Hill*, 430 S.W.3d 346, 348-49 (Mo. App. W.D.

5

2014)).  We will defer to the trial court's determination of the weight to be given the evidence and witness credibility.  *Brasher*, 483 S.W.3d at 450.  The trial court may believe some, all, or none of the testimony of any witness.  *Id.*  We will affirm if the trial court's judgment is correct "under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient."  *Venture Stores, Inc. v. Pacific Beach Co. Inc.*, 980 S.W.2d 176, 180 (Mo. App. W.D. 1998).

## Discussion

### *Point I: Appellant Negligently Misrepresented the Condition of the House*

#### A.  Negligent Representation Analysis

Appellant argues the trial court erred by permitting Respondent to sue for negligent misrepresentation because Respondent "fully" inspected the house before purchasing it and did not rely on the Disclosure form.  Appellant further argues the trial court improperly imposed a heightened standard of care on property owners who hire contractors to perform repairs.

In negligent misrepresentation cases, the Missouri Supreme Court has stated, "[w]here a party makes his own investigation, he will be presumed to have been guided by what he learned and the conclusions he reached and will not be permitted to say that he relied on misrepresentations of another and that he was deceived thereby," subject to three exceptions.  *Craycroft v. Carlton*, 322 S.W.3d 587, 589-90 (Mo. App. S.D. 2010) (quoting *Consumers Coop. Ass'n v. McMahan*, 393 S.W.2d 552 (Mo. 1965)).  A negligent misrepresentation action may be appropriate if (1) the party making an independent inspection makes a partial inspection and relies on the inspection *and* the misrepresentation; (2) the buyer lacks equal footing for learning the truth where the facts are peculiarly within the knowledge of the representing party and are difficult to ascertain; *or* (3) if the seller makes a "distinct and specific representation," the buyer

6

may rely on the representation. *Craycroft*, 322 S.W.3d at 590 (citing *Iota Mgmt. Corp. v. Boulevard Inv. Co.*, 731 S.W.2d 399, 413 (Mo. App. E.D. 1987) (emphasis added)).

The trial court concluded all three of the exceptions applied to Respondent and granted judgment in her favor. To find for Respondent, only one exception must apply. *Craycroft*, 322 S.W.3d at 590. Appellant argues the trial court misapplied the law because none of the exceptions apply. We disagree.

### 1. Independent Inspection Exception

Appellant asserts the Independent Inspection exception does not apply because Respondent hired an inspector to search for defects before purchasing. Appellant argues the inspector's report informed Respondent of potential water problems. Appellant argues the house's defects were "easily ascertainable," noting the inspector discovered blistering in the sunroom walls from water before the purchase. Appellant argues Respondent did not need specialized knowledge to understand the dangers of a "leaky roof or porous basement."

Appellant relies on *McClain v. Papka*, 108 S.W.3d 48 (Mo. App. E.D. 2003) to argue buyers who discover a defect before purchase but proceed with the purchase anyway cannot bring a negligent misrepresentation claim. In *McClain*, a home buyer who worked in the home repair industry purchased a house and the sellers disclosed termites existed in a garage wall. *Id*. The sellers stated they were unaware of any other termites. *Id*. The buyer was offered an opportunity to inspect other locations and declined to do so before purchase. *Id*. at 53. After purchasing the house, the buyer discovered there were termites in other parts of the garage. *Id*. The *McClain* court concluded the sellers did not misrepresent their knowledge of the termites. *Id*.

7

Appellant analogizes the facts of *McClain* to Respondent's hired inspector, who produced a report of recommended repairs before the sale. Appellant notes the recommended repairs were made and concludes Respondent fully inspected the property and was not entitled to rely on Appellant's representations.

Respondent argues the trial court correctly concluded Appellant's inspection was merely partial. Respondent's inspector stated his inspection was "limited and visual" and that he was not a specialist in engineering, plumbing, roofing, electrical work, or carpentry. The inspector also warned Respondent new paint in the basement may have concealed evidence of water penetration. Respondent argues she relied on Appellant's representations about the extent of the house's renovations and the roof's age in her decision not to hire a specialist. Specifically, Respondent points to Appellant's claims the building was fully renovated, the roof was two years old, and there was no history of water damage. Finally, Respondent argues if Appellant's claim the building's defects were "easily ascertainable" was true, Appellant would have discovered the defects and been required to disclose them.

We agree. Unlike the termites in *McClain*, Respondent could not have seen how the house would withstand rain and relied on Appellant's representations about the age and condition of the roof. Appellant cannot simultaneously argue (1) the house was damaged because of its "easily ascertainable" vulnerabilities, yet (2) Appellant was unaware of the "easily ascertainable" problems with the roof, sunroom, walls, and foundation, despite owning the building for four years, renting it to tenants, "fully renovat[ing]" it, and selling it. Further, Respondent did not discover the "easily ascertainable" vulnerabilities until she sued and hired an expert to perform a thorough inspection, which revealed intentionally concealed defects.[3] Even

---

[3] We note Appellant misrepresented the record by arguing Respondent's video of water flowing into her home indicates she knew about the water problems before purchasing the house. Not only did Respondent record video of

8

though the initial inspection yielded some repairs, Respondent relied on the Disclosure's description of the roof's condition and past water damage. The trial court did not erroneously declare or apply the law by concluding Respondent performed only a partial inspection of the property and relied on Appellant's representations. *Brasher*, 483 S.W.3d at 450.

### 2. *Equal Footing and Knowledge of the Facts Exception*

Even if the first exception did not apply, we could affirm based on the second or third exceptions because *Craycroft* requires only one exception to apply. 322 S.W.3d at 590.

Appellant argues the parties were on equal footing with equal ability to discover defects because Respondent hired an inspector to look at the house. Parties are on equal footing when ordinary diligence would have revealed the condition or defect. *White v. Bowman*, 304 S.W.3d 141, 151 (Mo. App. S.D. 2009). Appellant argues Respondent's hiring of an inspector elevated Respondent's knowledge above Appellant's knowledge. Appellant argues the facts here are like *White*, where a buyer and seller inspected a building, discovered mold and mildew, and ignored the issue. *Id*. Specifically, Appellant argues Respondent knew the sunroom's roof potentially had problems because the inspector discovered evidence of an inactive leak.

Next, Appellant argues ownership of property does not give superior knowledge of defects when the owner does not live on the property. Appellant argues there would have been no reason to know about problems with the building unless a tenant or the renovating contractors told Appellant.

We disagree. Whether parties are on equal footing is ordinarily a question for the factfinder. *Colgan v. Washington Realty Co.*, 879 S.W.2d 686, 691 (Mo. App. E.D. 1994). While a buyer may elevate their knowledge equal to or greater than the seller by hiring an

---

water entering her home *after* closing, but some of the videos were also taken approximately eight months after closing.

inspector who specializes in a highly technical field, a buyer who "sent an inspector into the house for a few hours, an inspector who may or may not have seen the house when it rained" is not on equal footing. *Id*. Although Appellant did not live in the building, Appellant financed and controlled a "full gut rehab" in which nearly everything was replaced. It certainly rained at some point during the rehabbing process. The trial court did not believe Appellant would not have known about the water problems in the building. The trial court may believe all, some, or none of a witness's testimony and we defer to the trial court's credibility findings. *Brasher*, 483 S.W.3d at 450.

The trial court heard the evidence and concluded Respondent's hiring of an inspector did not put her knowledge of how the building handled rain on equal footing with Appellant. Reviewing the evidence in the light most favorable to the judgment, we defer to the trial court's factfinding and credibility determinations. *Id*. The trial court did not erroneously declare or apply the law by concluding the parties were not on equal footing. *Id*.

### 3. Distinct and Specific Representation Exception

The third exception applies when a seller makes a specific representation to the buyer. Appellant argues no specific representations were made about the likelihood of leaks in the house. Appellant claims its only specific representations were that the house was fully renovated. Further, Appellant argues its disclaimer language shields it from liability.

The Disclosure disclaimer states:

> Since these disclosures are based on the Seller's knowledge, you cannot be sure that there are, in fact, no problems with the property simply because the Seller is not aware of them. The answers given by the Seller are not warranties of the condition of the property. Thus, you should condition your offer on a professional inspection of the property.

10

Appellant relies on *Mark Twain Kansas City Bank v. Jackson, Brouillete, Pohl & Kirley, P.C.*, 912 S.W.2d 536, 540 (Mo. App. W.D. 1995) to argue a clear disclaimer can prevent plaintiffs from establishing reliance on the representation. In *Mark Twain Kansas City Bank*, a law firm provided an opinion letter to the bank with a disclaimer that stated, "this opinion is valid as of the date her[e]of, but we take no responsibilities to any information or opinions contained herein." *Id*. The Western District concluded a "sophisticated investor [such as a bank] would have questioned the disclaimer before accepting the opinion letter and making the loan." *Id*. Further, the bank knew of "significant irregularities in the transaction that preclude reliance on the letter." *Id*.

*Mark Twain Kansas City Bank* is inapposite. First, the relationship between a bank and law firm differs from the relationship between an experienced, professional home remodeling company and a first-time home buyer. Second, the opinion letter in *Mark Twain Kansas City Bank* contained limiting language beyond anything in the Disclosure.

Appellant owned the building for four years and oversaw a total renovation. The Disclosure specifically denied knowledge of problems with the roof or leaks in the basement. The trial court did not believe Appellant's claimed lack of knowledge about the condition of the house and found the claim of full renovations was false. We defer to the trial court's factfinding and credibility determinations. *Brasher*, 483 S.W.3d at 450. The trial court's conclusion Appellant made specific representations to Respondent did not erroneously declare or apply the law. *Id*.

### B. Standard of Care Analysis

Appellant argues the trial court improperly imposed a heightened standard of care in its supervision of renovations. Appellant alleges the trial court's decision imposes a burden on

11

property owners to "spend lavishly on in[-]house experts rather than hiring, and trusting, independent contractors." Further, Appellant claims affirming the trial court will force "business owners who are currently renovating Missouri properties, [to] continuously interfere and hinder the progress of their independent contractors with expert reviews to avoid liability . . . ." Appellant suggests property owners can protect themselves only by becoming experts and performing work themselves. Appellant concludes his conduct satisfied the standard of care because professionals were hired to renovate, and Brown performed a walkthrough to inspect the house.

We disagree. Appellant owned the property for four years and falsely stated the house was fully renovated and did not have leaks in the Disclosure. The Disclosure contained information and representations outside the scope of Respondent's inspector's review. Brown inspected the property for aesthetic purposes only and failed to investigate the effectiveness of the work. As a result, the Disclosure contained untrue representations about the house's condition and Respondent relied on them. For the reasons explained above, Respondent could rely on Appellant's representations.

Appellant cannot hide behind representations the contractors might have made regarding their work. "Knowledge of an agent while acting within the scope of authority and with regard to any business over which his authority reaches is knowledge of the principal." *Richardson v. Collier Bldg. Corp.*, 793 S.W.2d 366, 372 (Mo. App. W.D. 1990).

Point I is denied.

12

*Point II: The Trial Court did not Miscalculate Damages*[4]

The trial court's judgment awarded Respondent $45,500 for her negligent misrepresentation and MMPA claims,[5] $4,487.31 for the cost to replace the appliances because Appellant failed to transfer the warranties as promised, $1 for nominal damages for the trespass and ejectment claims, and $6,841.50 in attorney's fees for the MMPA claim. The judgment totaled $56,829.81. Appellant challenges the court's calculation of damages and argues some damages (1) improperly granted recovery for patent defects Respondent was aware of or (2) granted recovery for parts of the house that were not defective. Respondent argues (1) Appellant's arguments regarding patent defects were unpreserved and substantively meritless and (2) the trial court's damage award was consistent with Respondent's pecuniary loss from the diminished value of the house and Appellant's failure to transfer the appliances' warranties.

A. Patent Defects

Appellant did not raise a defense based on patent defects to the trial court. "A party on appeal generally must 'stand or fall' by the theory on which he tried and submitted his case in the court below." *Kleim v. Sansone*, 248 S.W.3d 599, 602 (Mo. banc 2008). "Errors not preserved on appeal may be reviewed for plain error at the appellate court's discretion, however appellate courts seldom grant plain error review in civil cases." *McGuire v. Kenoma, LLC*, 375 S.W.3d 157, 174 (Mo. App. W.D. 2012). "We will decline to exercise our discretion to review a claim

---

[4] This Point was impermissibly multifarious and does not comply with Rule 84.04(d). Specifically, Appellant argues the trial court erroneously applied the law and the trial court's decision was not supported by substantial evidence. Claims that a decision is unauthorized by law or unsupported by substantial evidence are distinct and independent. *Librach v. Librach*, 575 S.W.3d 300, 307 (Mo. App. E.D. 2019). While Appellant's multifarious point does not comply with the mandatory briefing requirements of Rule 84.04, we exercise our discretion to review the point *ex gratia* because the argument is readily understandable. *State ex rel. Hawley v. Robinson*, 577 S.W.3d 823, 827 (Mo. App. E.D. 2019).

[5] The court awarded $4,000 for Respondent's up-front repair expenses, $24,000 to demolish and rebuild the sunroom, $4,000 to replace the floor in the master bedroom, $3,000 to replace the master bedroom's ceiling and the roof, $500 to replace damaged trim boards, $7,000 to repair the basement, and $3,000 to rebuild the sunken concrete pads and sidewalks around the building that allowed water to flow in.

of plain error unless the claim facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *Id*. To the extent Appellant relies on unpreserved arguments, "this Court will not evaluate the issue." *Kleim*, 248 S.W.3d at 602.

Appellant asserts Respondent did not rely on Appellant's representations about the sunroom, outside sidewalk and concrete pads, trim boards, and basement because their defects were patent. Appellant argues Respondent cannot recover on a negligent representation theory when the defects are patent. Appellant relies on *Groothand v. Schlueter*, 949 S.W.2d 923, 929 (Mo. App. W.D. 1997) for the proposition "patent defects cannot be made the subject of misrepresentation."

Appellant argues the sunroom had patent defects because Respondent's inspector discovered the sunroom windows needed to be resealed and there was an inactive leak in one of the walls. Appellant challenges the court's award of $3,000 to repair the sidewalk and concrete pads around the house because Respondent and her inspector walked on the sidewalk and had ample opportunity to observe and report any defects. Further, Appellant argues no representations were made about the condition of the sidewalks. Similarly, Appellant argues any defects in the trim boards were patent because trim boards cannot be attached flush to brick. Finally, Appellant argues the water damage in the basement was caused by a patent defect in the walls. Appellant emphasizes Respondent's inspector identified deterioration in the basement walls and foundation and recommended repairs.

Appellant's arguments were not preserved, and we decline to review for plain error because Appellant's claim does not "facially establish substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *McGuire*, 375 S.W.3d at 174.

14

B. Undamaged Property

Appellant argues the trial court improperly awarded damages for parts of the house not damaged. Appellant points to a rental advertisement Respondent posted in August 2019. The advertisement said the basement was "great for storage" and did not mention leaks. Appellant argues Respondent also conceded the floor in the master bedroom was "valuable or usable in [its] current condition." Appellant claims Respondent conceded the only problem with the refrigerator was that its damaged feet caused it to lean. Appellant concludes Respondent's advertisement and testimony undercut her claimed damages and the trial court's award was not supported by substantial evidence.

Reviewing the evidence in the light most favorable to the judgment, we disagree with Appellant's characterization of Respondent's testimony and the trial court's findings.

> The goal of damages in a contract action is to place the injured party in the same position that the party would have been in had the contract been performed. The preferred measure of damages, as a general rule, in cases of substantial but defective performance by a contractor, is the cost of reconstruction or repair.

*Kelley v. Widener Concrete Const., LLC*, 401 S.W.3d 531, 541 (Mo. App. S.D. 2013). In cases of negligent misrepresentation, damages compensate the plaintiff for pecuniary loss: the difference in value between the purchase price and the value of the transaction or loss suffered because of the plaintiff's reliance on the misrepresentation. *B.L. Jet Sales, Inc. v. Alton Packaging Corp.*, 724 S.W.23d 669, 673 (Mo. App. E.D. 1987).

Appellant's preserved arguments ask this Court to reweigh the evidence and credibility of the witnesses, which we will not do. *Brasher*, 483 S.W.3d at 450. The trial court found Appellant made false representations about the condition of the roof, walls, subfloor, foundation, and leaks in the basement. The trial court found the undisclosed defects were different defects

15

than Respondent's inspector discovered and Appellant repaired before closing. As a sanction for Appellant's conduct during discovery, the trial court inferred Appellant instructed its contractors to "cover up or temporarily repair" defects, rather than "fully rehab" the home as promised in Appellant's representations (alterations omitted).

The trial court concluded the difference in value between the house Respondent bargained for and received was $45,500. Regarding the appliances, the trial court awarded the cost of replacement because Appellant's failure to transfer the warranties deprived Respondent of her contractual right to exercise them.

Appellant's claim the house and appliances were "usable" misses the point – Respondent relied on Appellant's misrepresentations, agreed to pay $220,000 for the house, and received a house worth $174,500. Appellant sold Respondent the kitchen appliances and their warranties, yet never transferred the warranties. We find no error in the trial court's conclusion Respondent could recover her pecuniary loss from Appellant's defective performance. *Kelley*, 401 S.W.3d at 541. The damage calculations were supported by substantial evidence and did not erroneously declare or apply the law.

Point II is denied.

*Point III: The Trial Court did not Err by Denying Appellant's Tortious Interference Claim*

On February 6, 2019, Respondent emailed the SLDC outlining her grievances with Appellant and Brown. The purpose of Respondent's email was to persuade the SLDC to stop assisting Appellant's development efforts through tax abatements. Respondent accused Appellant of "fraudulent behavior and negligence" and alleged Appellant's business endangered public safety. Respondent's email described the problems with her house, accused Appellant of harassment and stalking, and stated Respondent had a restraining order against Appellant. An

employee of the SLDC responded to Respondent's email on February 11, 2019, thanked her for reaching out, and informed her the SLDC was "halting all current and future applications" Brown and Amani had for tax abatements.

Appellant argues the trial court erred by concluding Respondent's email did not constitute tortious interference. Appellant asserts Respondent had no right to interfere with Appellant's relationship with the SLDC or potential home buyers, and even if she did, Respondent had no right to make false statements about Appellant or Brown. Respondent argues she had the right to email the SLDC about her experience with Appellant and Brown. Further, Respondent argues Appellant failed to meet its burden of establishing (1) Respondent's conduct caused the severance of Appellant's relationship with the SLDC, (2) Respondent was not justified in her actions, or (3) that her email constituted an improper means of communication.

The elements of tortious interference are "(1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." *Bishop & Assoc., LLC v. Ameren Corp.*, 520 S.W.3d 463, 472 (Mo. banc 2017). Defendants cannot be held liable for interfering with a business relationship if they have an unqualified right to perform the act. *Id*.

The trial court found for Respondent and against Appellant on Appellant's tortious interference counterclaim, concluding (1) a business expectancy existed between Appellant and the SLDC; (2) Respondent knew of the relationship; (3) while Respondent intended a breach to occur between Appellant and the SLDC, and a breach did occur, the trial court was silent on whether Respondent caused the breach; and 4) Respondent had justification for her interference.

17

We may affirm the judgment "under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient." *Venture Stores*, 980 S.W.2d at 180. Appellant bears the burden of affirmatively proving Respondent's conduct caused damage to Appellant's business relationship with the SLDC and lacked justification. *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 252 (Mo. banc 2006). To establish Respondent's liability for tortious interference, Appellant needed to prove its relationship with the SLDC was damaged "as a direct result of the interference." *Taylor v. Taylor*, 566 S.W.3d 641, 657 (Mo. App. E.D. 2018).

## A. Causation

Appellant argues the causation element was met because Respondent falsely accused Appellant of defrauding THD, Respondent's surveyor, and falsely claimed to have secured a restraining order against Brown for harassment and stalking.[6]

In a tortious interference claim:

[t]he plaintiff must show that the defendant's acts induced or caused a breach of the relationship. To determine if the acts caused the breach, the "but for" test is applied. To determine whether the "but for" test is met, a two-step approach is used: 1) did [the] defendant actively and affirmatively take steps to induce the breach; and, if so, 2) would the [relationship] have [continued] absent the defendant's interference?

*Kesler v. Curators of the Univ. of Missouri*, 516 S.W.3d 884, 897 (Mo. App. W.D. 2017).

The trial court's findings of fact and conclusions of law suggest a temporal connection between the Respondent's conduct and the end of the relationship between Appellant and the

---

[6] Respondent filed for an order of protection against Brown on January 10, 2019. The court denied Respondent's request on March 28, 2019. At the time of the February 2019 emails Respondent's petition for an order of protection was merely pending.

SLDC. The trial court made no explicit findings regarding causation, however. The trial court's judgment states nowhere the end of the relationship was "induced or caused by" Respondent. The trial court merely notes the end of the relationship and states Respondent's email "*may* have been relevant" to the SLDC's decision (emphasis added). Where the trial court fails to make a finding on a specific issue, "we will consider it as having been found in accordance with the result reached." *Cent. Parking Sys. of Missouri, LLC v. Tucker Parking Holdings, LLC*, 519 S.W.3d 485, 493 (Mo. App. E.D. 2017). Because we consider the unfound fact to be in accordance with the judgment, we proceed as though the trial court found Appellant failed to prove causation.

Causation is a question of fact to be decided by the factfinder. *Fabricor, Inc. v. E.I. Dupont De Nemours & Co.*, 24 S.W.3d 82, 95 (Mo. App. W.D. 2000); *Howard v. Youngman*, 81 S.W.3d 101, 114 (Mo. App. E.D. 2002). A close temporal connection can be circumstantial evidence of causation. *McGaughy v. Laclede Gas Co.*, 604 S.W.3d 730, 752 (Mo. App. E.D. 2020). Plaintiffs "may prove essential facts by circumstantial evidence as long as the facts proved and the conclusions to be drawn are of such a nature and are so related to each other that the conclusions may be fairly inferred." *Reed v. Curators of the Univ. of Missouri*, 509 S.W.3d 816, 821 (Mo. App. W.D. 2016). It was the factfinder's role to decide whether the circumstantial evidence here was sufficient. *Fabricor*, 24 S.W.3d at 94. "[M]ere speculation or conjecture is not sufficient evidence to prove causation." *Union Elec. Co. v. A.P. Read Homes, LLC*, 485 S.W.3d 773, 777 (Mo. App. W.D. 2016). The trial court did not find Respondent's email convinced the SLDC to terminate its relationship with Appellant. Appellant's claims are conjecture and speculation, and therefore insufficient to support a causation finding.

Assuming Respondent's emails constituted active and affirmative steps to damage Appellant's relationship with the SLDC under the first step of the but-for test, Appellant did not meet the second step, showing the end of the relationship occurred because of the interference. Appellant presented no evidence establishing the SLDC ceased its business relationship with Appellant because of Respondent's *false* statements or that Respondent was not justified in contacting the SLDC. Appellant could have called an SLDC employee to testify about whether Respondent's false statements contributed to the SLDC's decision to stop working with Appellant, but did not. Instead, Appellant relied solely on the contents of the email conversation between Respondent and an SLDC employee. The February 11, 2019 response email from the SLDC provides no reason why it was "halting all current and future applications" with the Appellant. The trial court was forced to interpret the significance of the emails without the benefit of witness testimony. Given the information available to the trial court, we find no error in the court's imputed conclusion Appellant failed to prove causation. *Kesler*, 516 S.W.3d at 897.

### B. Lack of Justification

Appellant also failed to prove Respondent's conduct lacked justification. "If the defendant has a legitimate interest, economic or otherwise, in the expectancy the plaintiff seeks to protect, then the plaintiff must show that the defendant employed improper means . . . ." *W. Blue Print Co. v. Roberts*, 367 S.W.3d 7, 20 (Mo. banc 2012). "Improper means" are independently wrongful acts and include defamation or misrepresentation of fact. *Id*. The Missouri Supreme Court has held the "improper means" analysis is only relevant if the speaker was "seeking to further *only* his or her own interests." *Id*. (emphasis added).

Appellant produced no evidence establishing the purpose of Respondent's email was to further *only* her own interests. The trial court found Respondent's purpose for interference was to protect "the community and public safety" from "blight . . . disguised as rehabilitation." Neither the trial court nor this court may overrule the Missouri Supreme Court's "improper means" jurisprudence. Therefore, the trial court did not err in concluding Respondent's communications with the SLDC were justified.

Without evidence supporting Appellant's allegations, Appellant's point is meritless. The trial court's judgment is correct because Appellant failed to prove Respondent caused the termination of Appellant's business relationship *or* that Respondent's communications with the SLDC lacked justification. The trial court did not erroneously apply the law by concluding Appellant failed to meet its burden of proof. *Brasher*, 483 S.W.3d at 450.

Point III is denied.[7]

### Attorneys' Fees

Before submission of this case on appeal, Respondent moved this Court to award attorneys' fees. The motion was taken with the case. "While 'appellate courts have the authority to allow and fix the amount of attorney's fees on appeal, we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested.'" *Berry v. Volkswagen Grp. Of Am., Inc.*, 397 S.W.3d 425, 433 (Mo. banc 2013) (quoting *Rosehill Gardens, Inc. v. Luttrell*, 67 S.W.3d 641, 648 (Mo. App. W.D. 2002)).

Section 407.025 provides courts have discretion to award "reasonable attorney's fees" in MMPA actions. The trial court exercised its discretion and awarded Respondent attorneys' fees

---

[7] Appellant also argued the trial court was biased and "wanted to punish a California developer flipping houses in Saint Louis City." Appellant asserts the trial court's judgment was "so lopsided," it violated the Privileges and Immunities clause of Article IV of the federal constitution. We find no support in the record for these assertions.

proportional to the time spent litigating the MMPA claim at trial. We also exercise our discretion and remand for the trial court to determine whether Respondent's motion for attorneys' fees on appeal should be granted. If the trial court determines Respondent is entitled to attorneys' fees on appeal, we instruct the court to calculate and impose reasonable fees proportional to the time spent addressing issues involving Respondent's MMPA claim on appeal.

## Conclusion

For the reasons stated above, the trial court's judgment is affirmed. We remand for the trial court to calculate reasonable attorneys' fees on appeal.

_____
Philip M. Hess, Judge

Gary M. Gaertner, Jr., P.J. and
Michael E. Gardner, J. concur.