SEAN SIEBERT, )
 )
 Plaintiff-Appellant, )
 )
v. ) No. SD36814
 ) Filed: August 3, 2021
PEOPLES BANK, )
 )
 Defendant-Respondent. )

 APPEAL FROM THE CIRCUIT COURT OF CRAWFORD COUNTY

 Honorable Megan K. Seay, Circuit Judge

AFFIRMED
 Plaintiff Sean Siebert (Siebert) filed a four-count petition (Petition) against defendant

Peoples Bank (the Bank) concerning a loan guaranty made by Siebert. The Petition

contained counts alleging: (1) breach of contract; (2) fraudulent misrepresentation; (3)

negligent misrepresentation; and (4) unjust enrichment. The Bank filed a motion to dismiss,

which contended that each count failed to state a claim upon which relief could be granted.

The trial court agreed and sustained the Bank’s motion to dismiss via docket entry. After

that ruling, Siebert elected to stand on the Petition as pleaded. Thereafter, the court entered

a judgment stating that all four counts of Siebert’s Petition were dismissed without prejudice
for failure to state a claim for relief against the Bank. Siebert has appealed and presents

four points (one for each count) challenging the dismissal of the Petition.

 Existence of Statutory Authority for this Appeal

 After Siebert filed his notice of appeal, this Court ordered Siebert to show cause why

the appeal should not be dismissed for lack of a final judgment. In Siebert’s response, he

argued that the trial court’s ruling falls within an exception to the general rule that a

dismissal without prejudice is not final and appealable. We ordered that issue taken with

the case.

 “This Court has an obligation, acting sua sponte if necessary, to determine its

authority to hear the appeals that come before it.” First Nat’l Bank of Dieterich v. Pointe

Royale Prop. Owners’ Ass’n, Inc., 515 S.W.3d 219, 221 (Mo. banc 2017); see also Bare v.

Carroll Elec. Coop. Corp., 516 S.W.3d 395, 397 (Mo. App. 2017). The statutory basis for

the appeal in this case is § 512.020, which authorizes an appeal from a “[f]inal judgment in

the case[.]” § 512.020(5).1 “A final judgment is a prerequisite to appellate review.”

Ndegwa v. KSSO, LLC, 371 S.W.3d 798, 801 (Mo. banc 2012). “If the circuit court’s

judgment was not a final judgment, then the appeal must be dismissed.” Id. A final

judgment “resolves all issues in a case, leaving nothing for future determination.” Gibson

v. Brewer, 952 S.W.2d 239, 244 (Mo. banc 1997); Ndegwa, 371 S.W.3d at 801.

 “The general rule is that a dismissal without prejudice is not a final judgment and,

therefore, not appealable.” Doe v. Visionaire Corp., 13 S.W.3d 674, 676 (Mo. App. 2000);

see Naylor Senior Citizens Hous., LP v. Side Constr. Co., Inc., 423 S.W.3d 238, 243 (Mo.

 1
 All statutory references are to RSMo (2016). All rule references are to Missouri
Court Rules (2021).

 2
banc 2014). One recognized exception to this general rule, however, is a dismissal without

prejudice for “failure of the petition to state a claim where the plaintiff chose not to plead

further[.]” Doe, 13 S.W.3d at 676.2 When the effect of the trial court’s ruling is to dismiss

a plaintiff’s action and not merely the pleading, then the dismissal is appealable. Mahoney

v. Doerhoff Surgical Services, Inc., 807 S.W.2d 503, 506 (Mo. banc 1991); Nicholson v.

Nicholson, 685 S.W.2d 588, 589 (Mo. App. 1985). Stated another way, if the dismissal

was such that refiling of the petition at that time would have been a futile act, then the order

of dismissal is appealable. Nicholson, 685 S.W.2d at 589.

 Here, the dismissal without prejudice was a dismissal of Siebert’s specific theory of

recovery alleged in each count. Siebert argues that: (1) the dismissal was made in response

to arguments raised by the Bank that challenged whether each count stated a claim upon

which relief could be granted, rather than the way each theory was pleaded; and (2) refiling

the petition would have been a futile act. We agree. The Bank’s motion to dismiss asserted

that, as a matter of law, each count did not state a claim upon which relief could be granted.

There was no argument from the Bank that any count could be repleaded in a way that would

make it state a claim for relief. Therefore, “the judgment entered is final and appealable.”

Mahoney, 807 S.W.2d at 506; State ex rel. Henderson v. Asel, 566 S.W.3d 596, 599 n.6

(Mo. banc 2019). Accordingly, we address the merits of Siebert’s appeal.

 2
 While this exception is long-standing, the better practice to avoid questions of
finality would be for the trial court to enter a judgment of dismissal with prejudice if the
petition fails to state a claim and the plaintiff elects to stand on the petition without
repleading.
 3
 Standard of Review

 An appellate court reviews a circuit court’s decision to sustain a motion to dismiss de

novo. Missouri State Conference of Nat’l Ass’n for Advancement of Colored People v.

State, 601 S.W.3d 241, 246 (Mo. banc 2020). “A motion to dismiss does not permit the

circuit court – or this Court on appeal – to determine the merits of a claim.” Id. Instead,

the proper inquiry on a motion to dismiss “is solely a test of the adequacy of the petition.”

Mitchell v. Phillips, 596 S.W.3d 120, 122 (Mo. banc 2020) (citation omitted).

 When considering a motion to dismiss for failure to state a claim upon which relief

can be granted, we also consider exhibits attached to the petition as a part of the allegations.

See Hendricks v. Curators of Univ. of Missouri, 308 S.W.3d 740, 747 (Mo. App. 2010);

Rule 55.12 (“[a]n exhibit to a pleading is a part thereof for all purposes”). Further, “this

Court must accept all properly pleaded facts as true, giving the pleadings their broadest

intendment, and construe all allegations favorably to the pleader.” Mitchell, 596 S.W.3d at

122-23 (citation omitted). We do not weigh the plaintiff’s factual allegations to determine

whether they are credible or persuasive. Nazeri v. Missouri Valley College, 860 S.W.2d

303, 306 (Mo. banc 1993).

 We will, however, disregard conclusory allegations of fact and legal conclusions,

neither of which can be considered by an appellate court in determining whether a petition

states a claim upon which relief can be granted. See Hall v. Podleski, 355 S.W.3d 570, 578

(Mo. App. 2011). A motion to dismiss is properly granted when a petition “does not contain

the ultimate facts or any allegations from which to infer those facts[.]” Id. When the trial

court does not provide reasons for its dismissal, an appellate court will presume the

dismissal was based on at least one of the grounds stated in the motion to dismiss. Fenlon

 4
v. Union Elec. Co., 266 S.W.3d 852, 854 (Mo. App. 2008). We will affirm if the dismissal

was appropriate on any ground stated in the motion. Id.

 Factual and Procedural Background

 1. Factual Allegations from the Petition

 Siebert filed the Petition in November 2019. As required by our standard of review,

we ignore any conclusory allegations of fact or legal conclusions. Thus pruned, the Petition

alleged the following facts applicable to all four counts.

 TwoAlity, LLC (TwoAlity) was a Missouri limited liability company. Its operations

were governed by a 2011 operating agreement (Operating Agreement), a copy of which was

attached to the Petition as Exhibit 1. Members included Brynne and Bailye Stansberry (the

Stansberrys); Mardy Leathers (Leathers); and Siebert.

 On March 6, 2013, TwoAlity entered into a loan agreement with the Bank. The

Promissory Note and Security Agreement document (hereinafter referred to as the Loan)

was signed by the Stansberrys and Siebert. A copy of the Loan was attached to the Petition

as Exhibit 2. As a part of the Loan transaction, the “Bank received a copy of the 2011

Operating Agreement[.]” Pursuant to the terms of the Loan, the Bank agreed to loan

TwoAlity up to $150,000. The Loan qualified as a United States Small Business

Administration (SBA) loan, pursuant to a separate contract between the Bank and the SBA.

 On March 6, 2013, Siebert also executed two guaranties for the Loan. First, Siebert

signed a guaranty agreement with the Bank (Bank Guaranty), a copy of which was attached

to the Petition as Exhibit 3. Siebert also executed an “unconditional guarantee” agreement

with the SBA (the SBA Guarantee), a copy of which was attached to the Petition as Exhibit

4.

 5
 The Loan defined the pronouns “I” and “me” to include each borrower who signed

the Loan and any guarantor who agreed to pay the Loan. “You” and “Your” refer to the

Bank as lender. The Loan states, in relevant part: “I promise to pay you or your order, at

your address, or at such other location as you may designate, amounts advanced from time

to time under the terms of this Loan Agreement up to the maximum total principal balance

of $150,000[.]” With respect to advances, the Loan required indemnification by the

borrower or guarantor, even if the person requesting the advance was “unauthorized”:

 I will indemnify you and hold you harmless for your reliance on any request
 for advances that you reasonably believe to be genuine. To the extent
 permitted by law, I will indemnify you and hold you harmless when the
 person making any request represents that I authorized this person to request
 an advance even when this person is unauthorized or this person’s signature
 is not genuine.

As to the amount due, the Loan stated “[the Bank’s] records will be conclusive evidence as

to the amount of advances, the Loan’s unpaid principal balances and the accrued interest.”

 In the SBA Guarantee, Siebert unconditionally guaranteed payment of the Loan for

$150,000 to TwoAlity made by the Bank on March 6, 2013. This document included a

section 6 entitled “RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR

WAIVES[.]” Section 6.C. stated that Siebert waived any “defenses based upon any claim”

that, in relevant part:

 11) [the Bank] made errors or omissions in Loan Documents or
 administration of the Loan.
 ….
 16) [the Bank] has taken an action allowed under the Note, this Guarantee,
 or other Loan Documents.

This document also included a section 9 entitled “GENERAL PROVISIONS[.]” Section

9.B. stated, in relevant part, that “Guarantor’s liability will continue even if SBA pays [the

Bank].”

 6
 On September 3, 2013, Siebert withdrew as a member of TwoAlity. Leathers had

previously resigned as a member. “The remaining members of TwoAlity did not, within 90

days of Siebert’s or Leathers’ withdrawal as a member of Twoality, unanimously elect to

continue the company and carry on its business.” On December 20, 2013, several

individuals, including some old members of TwoAlity, executed an operating agreement

purporting to operate as TwoAlity.

 Following execution of the Loan in March 2013, and prior to September 3, 2013, the

Bank made various cash advances to TwoAlity pursuant to the Loan. On January 9, 2014,

the Bank advanced the additional sum of $74,567.46 to the Stansberrys (the January Cash

Advance).

 On March 8, 2016, the Bank declared TwoAlity in default. According to the Bank,

TwoAlity’s loan balance was $135,981.45. The Bank did not seek repayment from Siebert

pursuant to the Loan or the Bank Guaranty. Instead, the Bank requested reimbursement

from the SBA of the amount owed on the Loan.

 Pursuant to the SBA Guarantee with Siebert, the SBA (through the U.S. Treasury)

demanded from Siebert the reimbursement amount it paid to the Bank, plus additional

charges and fees, for a total of $177,785.47. Siebert disputed and appealed that debt with

the SBA, but his appeal was denied. After threat of collection from the SBA, Siebert started

making payments to the SBA. He filed the Petition thereafter.

 2. The Bank’s Motion to Dismiss

 In lieu of an answer, the Bank filed a motion to dismiss the Petition.

See Rule 55.27(a)(6). The motion to dismiss asserted that each count of the Petition failed

to state a claim upon which relief could be granted. The trial court sustained the motion and

 7
dismissed the Petition for failure to state a claim for relief against the Bank. This appeal

followed.

 Discussion and Decision

 Point 1 – Breach of Contract

 Siebert’s first point contends the trial court erred in dismissing Siebert’s breach of

contract theory of recovery alleged in Count 1. According to Siebert, the Bank breached an

implied covenant of good faith and fair dealing contained in the Loan because: (1) his

withdrawal as a member of TwoAlity caused it to dissolve pursuant to the Operating

Agreement and § 347.137; (2) at the time of the January Cash Advance, the Bank knew, or

should have known, that TwoAlity had dissolved; (3) the January Cash Advance was

unauthorized; and (4) for that reason, the balance due submitted by the Bank to the SBA

was inaccurate, false, and inflated. That argument lacks merit for the following reasons.

 First, the Petition does not allege facts that support the causation element of a breach

of contract theory of recovery. “To make a submissible case for a breach of contract claim,

a party must allege and prove (1) mutual agreement between parties capable of contracting;

(2) mutual obligations arising out of the agreement; (3) valid consideration; (4) part

performance by one party; and (5) damages resulting from the breach of contract.” Fidelity

Nat’l Ins. Co. v. Tri-Lakes Title Co., Inc., 968 S.W.2d 727, 730 (Mo. App. 1998); see also

Abbott v. Haga, 77 S.W.3d 728, 733 (Mo. App. 2002) (breach of contract theory failed

because the property owner did not prove that his damages resulted from the contractor’s

alleged breach of the agreement); Midwest Materials Co. v. Village Dev. Co., 806 S.W.2d

477, 490 (Mo. App. 1991) (to recover on a breach of contract theory, a party must plead and

prove damages resulting from the breach).

 8
 Here, Siebert’s liability arose directly from the enforcement of the SBA Guarantee

contract against him. Siebert’s liability to the SBA continued, even though it paid the Bank

the amount due on the Loan. Siebert initially disputed his contractual obligation to the SBA,

but his appeal was denied. Thereafter, he started making payments to the SBA. According

to the SBA Guarantee, Siebert waived any defenses based upon a claim that the Bank

committed errors in the administration of the Loan, or based upon actions taken by the Bank

allowed by the Loan. The January Cash Advance was made to the Stansberrys, who were

borrowers on the Loan and members of TwoAlity. The Loan contained provisions in which

Siebert agreed to hold the Bank harmless for “unauthorized” advances. Siebert also agreed

that the Bank’s records would be “conclusive evidence” as to the amount of advances, the

unpaid balance, and the amount of accrued interest.

 Second, Siebert’s allegations about the Bank’s knowledge of the terms of the

Operating Agreement do not support the breach of contract theory. The Operating

Agreement did not create any contractual obligations or liabilities on the part of the Bank,

which was not a party to that agreement. It is a well settled principle of Missouri law that

“a contract generally binds no one but the parties thereto, and it cannot impose any

contractual obligation or liability on one not a party to it.” Cont’l Cas. Co. v. Campbell

Design Grp., Inc., 914 S.W.2d 43, 44 (Mo. App. 1996); Turner v. Wesslak, 453 S.W.3d

855, 858 n.4 (Mo. App. 2014); Landstar Invs. II, Inc. v. Spears, 257 S.W.3d 630, 632 (Mo.

App. 2008); Kansas City Downtown Minority Dev. Corp. v. Corrigan Assocs. Ltd. P’ship,

868 S.W.2d 210, 223-24 (Mo. App. 1994).

 Third, Siebert’s reliance on the implied covenant of good faith and fair dealing is

misplaced. It is true that Missouri law imposes upon each party to a contract a “duty of

 9
good faith and fair dealing” in the performance and enforcement of the contract. Rock Port

Market, Inc. v. Affiliated Foods Midwest Coop., Inc., 532 S.W.3d 180, 188 (Mo. App.

2017). There can be no breach of that duty, however, “when the contract expressly permits

the actions being challenged, and the defendant acts under the express terms of the contract.”

Park Ridge Associates v. U.M.B. Bank, 613 S.W.3d 456, 465 (Mo. App. 2020). The

covenant of good faith and fair dealing is not “an overflowing cornucopia of wished-for

legal duties; indeed, the covenant cannot give rise to new obligations not otherwise

contained in a contract’s express terms.” Jennings v. Bd. of Curators of Mo. State Univ.,

386 S.W.3d 796, 798 (Mo. App. 2012) (citation omitted). As explained above, the actions

taken by the Bank were all authorized by the express terms of the Loan.

 For all these reasons, Count 1 fails to allege sufficient facts to support the breach of

contract theory of recovery. The trial court correctly dismissed Count 1, so Point 1 is denied.

 Points 2 and 3 – Fraudulent and Negligent Misrepresentation

 Siebert’s second and third points contend the trial court erred in dismissing Siebert’s

fraudulent misrepresentation count (Point 2) and negligent misrepresentation count (Point

3). Each theory of recovery requires, inter alia, pleading and proof of a false representation.

See Joel Bianco Kawaski Plus v. Meramec Valley Bank, 81 S.W.3d 528, 536 (Mo. banc

 10
2002) (fraudulent misrepresentation)3; Craycroft v. Carlton, 322 S.W.3d 587, 589 (Mo.

App. 2010) (negligent misrepresentation).4

 Count 2 and Count 3 each alleged, inter alia, that: (1) the “information [the Bank]

provided to the SBA for amounts allegedly owed on [the Loan] contained materially false

or misleading statements or omissions”; (2) the alleged balance due was “inaccurate, false,

and inflated, as it included the January Cash Advance” that was “unauthorized” pursuant to

the Operating Agreement; and (3) the “SBA reasonably relied upon the information

provided by [the Bank]” in making a decision to collect against Siebert. These allegations

are not sufficient to allege either a fraudulent or negligent misrepresentation theory of

recovery.

 As already explained in our discussion of Point 1, the Bank’s statement to the SBA

of the amount owed on the Loan was not false. Siebert’s liability arose when the SBA

enforced the unconditional SBA Guarantee, which Sibert signed, against him. According

to the SBA Guarantee, Siebert waived any defenses based upon a claim that the Bank

 3
 The ultimate facts of fraudulent misrepresentation are: (1) a representation; (2)
the representation was false; (3) the representation was material; (4) the speaker knew it was
false; (5) the speaker intended that it be acted on by the hearer and in the manner reasonably
contemplated; (6) the hearer’s ignorance of its falsity; (7) the hearer’s reliance on its truth;
(8) the hearer’s right to rely thereon; and (9) the hearer’s consequent and proximate injury.
Joel Bianco, 81 S.W.3d at 536. Thus, a plaintiff must allege that the false statement by the
defendant was made to the plaintiff, that plaintiff had a right to rely upon the statement, that
the plaintiff so relied, and that as a result of the reliance, plaintiff suffered damage. See
Renaissance Leasing, LLC v. Vermeer Mfg. Co., 322 S.W.3d 112, 131-32 (Mo. banc
2010).
 4
 With respect to negligent misrepresentation, a plaintiff must allege that: “(1) the
speaker supplied information in the course of his business; (2) due to the speaker’s failure
to exercise reasonable care, the information was false; (3) the speaker intentionally provided
the information for the guidance of a limited group of persons in a particular business
transaction; (4) the listener justifiably relied on the information; and (5) as a result of such
reliance, the listener suffered pecuniary loss.” Craycroft, 322 S.W.3d at 589.
 11
committed errors in the administration of the Loan, or based upon actions taken by the Bank

allowed by the Loan. The January Cash Advance was made to the Stansberrys, who were

borrowers on the Loan and members of TwoAlity. Siebert’s argument that this advance

was “unauthorized” was based on the Bank’s failure to adhere to the terms of the Operating

Agreement. As noted above, the Operating Agreement did not create any contractual

obligations or liabilities on the part of the Bank, which was not a party to that agreement.

See, e.g., Cont’l Cas. Co., 914 S.W.2d at 44 (“a contract generally binds no one but the

parties thereto, and it cannot impose any contractual obligation or liability on one not a party

to it”). In any event, the Loan contained provisions in which Siebert agreed to hold the

Bank harmless for “unauthorized” advances. Siebert also agreed that the Bank’s records

would be “conclusive evidence” as to the amount of advances, the unpaid balance, and the

amount of accrued interest.

 The two cases upon which Siebert relies are factually distinguishable because each

involved an actual false representation. See Richey v. Philipp, 259 S.W.3d 1, 15-16 (Mo.

App. 2008) (involving an insurance agent’s false statement about what coverage was

provided by a homeowner’s policy)5; Wilson v. Murch, 354 S.W.2d 332, 337 (Mo. App.

1962) (involving false representations made by a principle to his agent with the intent that

the agent communicate the false representation to a third person for purpose of defrauding

that third person). For all of the foregoing reasons, Siebert failed to allege sufficient facts

to show that the Bank made a false representation. It is unnecessary for us to consider any

 5
 Richey was overruled on other grounds by Parr v. Breeden, 489 S.W.3d 774, 779-
80 (Mo. banc 2016) (holding that admission of duty is not binding on a court where the law
would not otherwise impose a duty).
 12
of the additional elements of either theory of recovery. The trial court correctly dismissed

Counts 2 and 3. Points 2 and 3 are denied.

 Point 4 – Unjust Enrichment

 Siebert’s fourth point contends the trial court erred in dismissing Siebert’s unjust

enrichment theory of recovery, as alleged in Count 4. This count asserted that: (1) the

information provided by the Bank to the SBA for the Loan contained “materially false or

misleading statements or omissions”; (2) as a direct result of the acts of the Bank, the “Bank

has been unjustly enriched” as the Bank “obtained money … from the SBA/Treasury for

reimbursement of cash advances made to TwoAlity”; (3) enrichment of the Bank was at the

expense of Siebert; and (4) it would be unjust to allow the Bank to retain the amount

received from the SBA as reimbursement of the Loan. These alleged facts are insufficient

to support the unjust enrichment count.

 “To establish the elements of an unjust enrichment claim, the plaintiff must prove

that (1) he conferred a benefit on the defendant; (2) the defendant appreciated the benefit;

and (3) the defendant accepted and retained the benefit under inequitable and/or unjust

circumstances.” Howard v. Turnbull, 316 S.W.3d 431, 436 (Mo. App. 2010); see also Peel

v. Credit Acceptance Corp., 408 S.W.3d 191, 216 (Mo. App. 2013) (an unjust enrichment

theory of recovery requires proof that the plaintiff conferred a benefit on the defendant); US

Bank Nat. Ass’n v. Cox, 341 S.W.3d 846, 852 (Mo. App. 2011) (same holding); Bauer

Dev. LLC v. BOK Fin. Corp., 290 S.W.3d 96, 100 (Mo. App. 2009) (same holding). The

Petition alleged that the benefit to the Bank was the reimbursement it received from the

SBA. That benefit came from the SBA, not Siebert. Because Count 4 fails to plead facts

showing that Siebert conferred a benefit on the Bank, the unjust enrichment theory of

 13
recovery was properly dismissed. See Bauer Dev. LLC, 290 S.W.3d at 100. We need not

discuss the other elements. Id. The trial court correctly dismissed Count 4, and Point 4 is

denied.

 The trial court correctly decided that the Petition failed to state a claim upon which

relief could be granted. Therefore, the judgment of the trial court is affirmed.

JEFFREY W. BATES, C.J./P.J. – OPINION AUTHOR

GARY W. LYNCH, J. – CONCUR

DON E. BURRELL, J. – CONCUR

 14